Mr. Chief Justice TANEY
 

 delivered the opinion of the court.
 

 This case is one of much interest, and has been very fully argued. There is, however, but a single question in it, and that is, whether the property in dispute was transferred to the plaintiff in error, and vested in him, by the indorsement and delivery of the warehouse documents in the manner stated in the record.
 

 The fact that McQueen & McKay by fraudulent means obtained the’money from the bank, with which they purchased the pork and flour, is not material in the decision of this question. The bank in these proceedings does not claim the property as its own, upon the ground that it was purchased with money fraudulently obtained from it. If it had intended to assert its title as owner, it should have proceeded by some appropriate action fo recover the property itself, or the value of it in damages. But the bank presents itself in the character of a creditor, seeking to collect its debt by an attachment against the property of its debtor. And the claims of both parties, plaintiff and defendant, rest upon the admission that-the pork and flour were the property of McQueen & McKay, and had been left by them in the custody of the warehousemen as their bailees.
 

 We are not, therefore, called upon to decide whether the owner of money fraudulently obtained from him can follow the proceeds in the hands of a bona
 
 fide
 
 purchaser without notice, and in the usual course of trade. As this question is not in the case, we forbear to examine it, although it was discussed in the argument at the bar. We must not, however, be understood as intimating that, if this point had arisen, the judgment of the court would have been different from that which we are. about to give.
 

 
 *398
 
 The case as it comes before us in substance is this. The pork and flour were purchased by McQueen &, McKay, at Fort Wayne, in the State of Indiana,' on the 4th of April, 1844. The articles were in the warehouses of the respective vendors at the time of sale, and the purchasers took from each of them a written memorandum of the sale, with a receipt for the money, and an engagement to deliver them on board of canal-boats soon after the opening of canal navigation. There was also a written guarantee from the respective vendors, that the articles sold should pass inspection. By the order of McQueen & McKay they were to be sent by canal-boats to Ludlow
 
 &
 
 Babcock, their agents at Toledo, in the State of Ohio, to be held by them until they received orders from McQueen dr- McKay.
 

 The documents executed by the warehousemen, herein before mentioned,.transferred the property and the possession of the pork and flour to McQueen & McKay, and the vendors from that time held it for them, and as their bailees.
 

 Being thus in possession, McQueen & McKay afterwards, on the 17th of April, in the city of New York, in consideration of the advance of money mentioned in the statement of the case, delivered tp Gibson, the plaintiff in error, the evidences of title which they had received from the vendors, indorsing thereon an order upon them to deliver the property to Gibson. They at the same time delivered to Gibson a letter to Ludlow & Babcock, their agents at Toledo, stating that they had received an advance from Gibson upon this property, and directing them to deliver it to him, and to comply with his orders.
 

 Gibson was a commission merchant residing in New York, and it is admitted that this transaction with McQueen
 
 &,
 
 McKay was in the usual course of his business. On the
 
 27ik
 
 of April, ten days after this transfer, the property was seized
 
 by
 
 the defendant in error, as sheriff, under an attachment issued on the same day at the suit of the bank, to obtain satisfaction for the debt due to it from McQueen & McKay. At the time of the attachment, the pork and flour still remained in the warehouses at Fort
 
 W&yae,
 
 and neither the warehousemen nor the attaching creditor had notice of the transfer to Gibson. The agent despatched by him arrived two days afterwards, and claimed the property. The sheriff refused to deliver it up, and this action of replevin was thereupon brought to recover it.
 

 In examining the question between these parties, it is proper to say, that, if the fact had not been admitted that the dealing between McQueen & McKay and the plaintiff was in the usual course of trade, the court would yet have felt itself hound to take judicial notice of it. Apart from the fraud imputed to
 
 *399
 
 McQueen & McKay, of which Gibson had no knowledge, the statement of facts in this cáse describes the usual course of the great inland commerce by which the larger part of the agricultural productions of the valley of the Mississippi find their way to a market. It has existed long enough to assume a regular form of dealing, aud it embraces such a wide extent of territory, and is of such general importance, that its ordinary course and usages are now publicly known and understood; and it is the duty of the court to recognize them, as it judicially recognizes the general and established usages of trade on the ocean. For if, by any decision of this court, doubt should be thrown upon the validity and safety of a contract fairly made according to the usages of this trade, and in the ordinary course and forms of business, the want of confidence would seriously embarrass its operations, to the injury of all connected with it, and would certainly be not less injurious to the agriculturist and producer than to the merchant aiid trader.
 

 The transaction, therefore, being in the usual course of trade, and free from all suspicion of bad faith on the part of the plaintiff, the question to be decided is, what was the legal effect of the indorsement and delivery of the warehouse documents, in consideration of the advance of money he then made to McQueen & McKay ? In the opinion of the court, it transferred to him the legal title and constructive possession of the property; and the warehousemen from the time of this transfer became his bailees, and held the pork and flour for him. The delivery of the evidences of title and the orders indorsed upon them was equivalent, in the then situation of the property, to the delivery of the property itself.
 

 This mode of transfer and delivery has been sanctioned in analogous cases by the courts of justice in England and this country, and is absolutely necessary for the purposes of commerce. A ship at sea may be transferred to a purchaser by. the delivery of a bill of sale. So also as to the cargo, by the indorsement and delivery of the bill of lading. It is hardly necessary to refer to adjudged cases to prove a doctrine so familiar in the courts. But the subject came before this court in the case of Conard
 
 v.
 
 The Atlantic Insurance Company, in 1 Pet. 445, where this symbolical delivery was fully considered and sustained. The same principle was decided in the case of Brown
 
 v.
 
 Heathcote, 1 Atk. 160; Greaves
 
 v.
 
 Hepke, 2 Barn. & Ald. 131; Atkinson
 
 v.
 
 Maling, 2 Term Rep. 465; Wilkes and Fontaine
 
 v.
 
 Ferris, 5 Johns. 335; Pleasants
 
 v.
 
 Pendleton, 6 Rand. 473; Ingraham
 
 v.
 
 Wheeler, 6 Wend. 277; Ricker
 
 v.
 
 Cross, 5 N. Hamp. 571; Gardner
 
 v.
 
 Howland, 2 Pick. 599;
 
 *400
 
 2 Kent’s Com. 499; Story on Sales, § 311. The rule is not confined to the usages of any particular commerce, but applies to every case where the thing sold is, from its character or situation at the time, incapable of actual delivery. The contract between the plaintiff and Mcdueen & McKay having been made in New York, the articles in the warehouses at Fort Wayne were incapable of actual delivery; consequently, the delivery of the evidences of title, with the order to the bailees indorsed on them, passed the title and possession to the plaintiff.
 

 It is true there is no formal assignment indorsed on the warehouse document. But the technical rules of common law conveyances and transfers of property have never been applied to mercantile contracts made in the usual course and forms of business. The indorsement of the delivery order upon these evidences of his title, like the indorsement upon a bill of lading, sufficiently manifests the intention of the parties that the title and possession should pass to Gibson. And when that intention is evident from the language of the written instruments and the nature and character of the contract, it is the duty of the court to carry it into execution without embarrassing it with needless formalities. A contrary rule would most commonly defeat the object which both parties designed to accomplish, and believed they had accomplished, by the instruments they executed.
 

 Nor, as respects'the legal title, can there be any distinction between the advance made by Gibson, and the case of an actual purchaser. To the extent of his advances he is a purchaser, and the legal title was conveyed to. him. to protect his advances. It is not like the lien of a factor, who makes advances for his principal upon goods in his possession. But even in that case the property cannot be withdrawn from his hands until his advances are repaid. But in the case before us, the title of Gibson is not a mere lien. The legal title, the right of property, passed to him, and Mcdueen & McKay retained nothing but an equitable
 
 interest in
 
 the surplus, if any remained after satisfying the claims of Gibson. The case of Conard
 
 v.
 
 The Atlantic Insurance Company, before referred to, was the case of a-loan of money upon a respondentia bond upon a cargo at sea, secured by an assignment on the bill of lading, and in that case the court said, — “ It is true that, in discussions in a court of equity, a mortgage is sometimes called a lien for a debt. And so it certainly is, and something more ; it is a transfer of the property itself as security for the debt. This must be admitted to be true at law, and it is equally true in equity, for in this respect equity follows the law.” 1 Pet. 441.
 

 
 *401
 
 The guarantee that the articles should pass inspection does not affect the character of the transaction, nor convert it into an executory contract. It is nothing more than the usual warranty of the soundness and quality.of the thing sold, which is taken by the purchaser in every sale of personal property when he does not choose to take the risk upon himself.
 

 It appears that the attachment was laid before the warehouse-men received notice of the transfer to Gibson. Undoubtedly it was his duty to use reasonable diligence in giving notice both to them and the agent at Toledo. And negligence in this respect on his part would be regarded as evidence of fraud, and might moreover put in jeopardy his right of property, if it passed into the hands of a
 
 bona fide
 
 purchaser without notice, and in the usual course of trade. But in this case there has been no unreasonable delay. The notice was promptly given, and the receipt of it by the bailees was not necessary to complete his title. As between him and the creditors of McQ,ueen & McKay, the property and possession vested in him at the time of the transfer and delivery of the documents. The cases before referred to establish this principle.
 

 Neither is the equitable interest of Mcdueen & McKay m the surplus (if any remain) material to the decision. This equitable interest is no doubt liable to attachment by the laws of Indiana. But that liability will not authorize the attaching creditor to take the property out of the hands of the legal owner, before his claims upon it are discharged. The equity of redemption upon a mortgage of real property is liable to attachment. But it will scarcely be contended, that the attaching creditor, or a purchaser under the attachment, or the officer levying it, could maintain an ejectment against a mortgagee in possession, or in any other way interfere with his possession, when holding it as security for money due him. The same rule applies to a mortgagee of personal property holding the legal title and possession to secure his advances.
 

 Upon the whole, therefore, we think there is error in the judgment of the Circuit Court, and that it must be'reversed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Indiana, and was argued by. counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs', and that this cause be, and the same is hereby, remanded to the said Circuit
 
 *402
 
 Court, for further proceedings to be had therein in conformity to the opinion of this pourt.