FITZ HENRY DE WOLF *vs.* JOHN D. GARDNER & another.

A., residing in Detroit, consigned flour to B., at Boston, the barrels being specifically branded and marked. At the same time, A. drew a draft on B., in favor of C., expressed to be "against said flour," and annexed to the draft a warehouse receipt and certificate, agreeing therein to hold the flour subject to the sole order of B. or assigns, and to ship the same to him at the first opportunity; and also stating that he had drawn his draft as above, and that the receipt and certificate should remain attached to the draft, and be evidence of a lien on said flour in favor of the holders of the draft until payment; but reserving to B., the consignee, the right to sell the same, holding the proceeds instead of the flour, in trust for the holders of the draft. C. discounted the draft for A. and forwarded it, with the receipt and certificate annexed, to B. at Boston, who accepted the same; but the draft was not paid at maturity, and continued to be held by C. unpaid. While the flour was *in transitu,* B. the consignee, pledged it to the defendants as collateral security for advances made by them to him, and the defendants received the flour and paid the charges of transportation. In an action of trover by A., the consignor, against the defendants, the pledgees, it was *held,* that the title and right of possession of the plaintiff in the flour had been so far divested that he could not maintain the action.

THIS was an action of trover for a large number of barrels of flour, commenced 13th March, 1848. At the trial before *Fletcher,* J., it appeared that the plaintiff, residing in Detroit, had been in the custom of purchasing flour, sometimes on his own account, and sometimes on joint account with Charles Dana Gibson, of Boston; and that in October, 1847, he purchased 1,800 barrels of flour, on his own account, and while the same was in his store at Detroit, drew certain drafts of similar character on said Gibson, in favor of the Michigan State Bank and the Michigan Insurance Company, and at the same time delivered to them certain warehouse receipts and

certificates annexed to the drafts. [The substance of one set of which is stated in the opinion.] Said drafts, receipts, and certificates annexed were sent to said Gibson by the holders, said bank and insurance company, and said Gibson accepted the same; but not being paid, they were returned to, and are still held by said bank and insurance company. The flour was forwarded by the plaintiff to said Gibson, and while it was *in transitu*, said Gibson pledged the same, for certain advances, to the defendants, who received the same and paid the charges thereon. The defendants contended that the drafts, receipts, and certificates drawn against the property, constituted a transfer of the title and possession of the flour from the plaintiff, so that he could not maintain this action; but the presiding judge ruled otherwise, and the verdict being for the plaintiff, the defendants excepted to said ruling.

The other facts material to the case appear in the opinion of the court.

*S. Bartlett & G. G. Hubbard,* for the defendants. I. By the receipt and contract of DeWolf, the legal title to the flour vested in Gibson, or the holders of the drafts, as trustee. It was thenceforth " subject to the sole order of Charles Dana Gibson, or his assigns." It was held in trust to secure the payment of the drafts, with authority to sell, " holding the proceeds instead of said property in trust for the holders of said drafts." *Lickbarrow* v. *Mason,* 1 Smith's Lead. Cas. 388.

II. The trust was one that Gibson might have accepted or declined; but the case finds that he accepted the trust by accepting the drafts, to which were annexed the receipts and declaration of trust, and the property vested in him in pursuance of it, under the bills of lading. Henceforth he assumed a direct legal responsibility to the bank, then and now the holder of the drafts. *Weston* v. *Barker,* 12 Johns. 276; *McMenomy* v. *Ferrers,* 3 Johns. 71. The test question upon which the case must turn is: did Gibson, by the acceptance of the drafts and bills of lading, with knowledge, and in pursuance of the receipt and contract, become in any manner liable to any claim or suit of the bank? If so, either DeWolf

can maintain no suit in respect to the property; or, in any event, cannot recover in this case a verdict for its whole value; since there will still be left rights of action to the bank. *Hodgson* v. *Anderson*, 3 B. & C. 842; *Crocker* v. *Whitney*, 10 Mass. 316; *Mowry* v. *Todd*, 12 Mass. 281; *Curtis* v. *Norris*, 8 Pick. 280.   To determine this question, it is immaterial whether the receipt and contract be deemed to have divested DeWolf of the legal title, upon the acceptance by Gibson, of the trust; for, if it had been otherwise, and if this be deemed a mere agreement on the part of DeWolf, to consign his property to Gibson, and instruct him to sell, and apply the proceeds to pay the drafts, leaving the title still in DeWolf until sale, yet, if he accepted this consignment, under this agreement, known to him, and afterwards abused his trust, or squandered the property, DeWolf could maintain no suit to recover the whole value, but Gibson would be liable to the bank, to the extent of their interest.   *Hall* v. *Marston*, 17 Mass. 575.   But the receipt and contract were intended to, and do in legal construction divest the title from DeWolf, and vest it in Gibson or the holders of the drafts, in trust.   *New Engl. Mar. Ins. Co.* v. *Chandler*, 16 Mass. 275; *Peters* v. *Ballistier*, 3 Pick. 495.   1st. The safety of the parties discounting the drafts requires this, and that all should not be left to the personal engagements of DeWolf, who, if left in control of the title, might defeat the security.   *Copperthwaite* v. *Sheffield*, 3 Com. 243.   2d. The terms of the storage receipt make the property subject to the sole order of Gibson.   3d. The storage receipt, if it may be so called, constituted a complete deliver, *Chapman* v. *Searle*, 3 Pick. 38.   4th. The terms "holding the proceeds, instead of said property in trust for the holders of the draft," would seem decisive.   5th. The use of the word " lien " is inapplicable, and is controlled by the other parts of the contract.   *Hall* v. *Jackson*, 20 Pick. 194; *Grosvenor* v. *Phillips*, 2 Hill, (N. Y.) 147.   The contract conferred rights on the holders of the drafts, not only against DeWolf personally, but against the property.   *Bailey* v. *Culverwell*, 8 B. & C. 448; *Walker* v. *Rostron*, 9 Mees. & Wels. 411; *Hutchinson* v. *Heyworth*, 9 Ad. & Ell. 375; *Scott* v. *Parcher*, 3 Merivale,

652; *Curtis* v. *Norris*, 8 Pick. 280; *Allen* v. *Williams*, 12 Pick. 297.

III. If Gibson held the property as trustee, with power of sale, it is submitted that the debated, and now almost exploded rule, as to the power of factors to pledge, has no application; but the *cestui que trusts* who do not sustain the legal relations of consignors, must seek their remedy under the common principle, against the trustee they have appointed, and have no rights against *bonâ fide* assignees of the trustee, without notice.

*C. P. Curtis & E. Merwin*, for the plaintiff. 1st. The warehouse receipts and certificates attached to the drafts drawn by the plaintiff on Gibson, (the factor,) created only a lien on the flour described in the receipts in favor of the holders of the drafts, and did not divest the property of the consignor, who may maintain trover for it against one who holds possession of it wrongfully. *Holley* v. *Huggeford*, 8 Pick. 73; *Selleck* v. *Smith*, 3 Bing. 603; *Bruce* v. *Wait*, 3 Mees. & Wels. 15; *Bryans* v. *Nix*, 4 Mees. & Wels. 775; Bac. Ab. Trespass, C. 2, note, and Trover C.; *Webb* v. *Fox*, 7 T. R. 387.

2d. Gibson was the factor of the plaintiff, with authority to sell, but not to pledge the flour. The lien of a factor is gone, where he wrongfully parts with the property. *Kinder* v. *Shaw*, 2 Mass. 398; *Jarvis* v. *Rogers*, 15 Mass. 389; *Holley* v. *Huggeford*, 8 Pick. 73; Story on Agency, §§ 113, 225.

SHAW, C. J. This case presents an exceedingly important and interesting question, affecting the very large and growing trade between the Western States, and the markets and shipping ports of the Atlantic coast, in the great staples of grain, pork, and other country produce. The facts in the present case are as follows:

The plaintiff executed in his own name a duplicate warehouse receipt, dated 27th October, 1847, acknowledging that he had received in store, in good order, &c., five hundred barrels superfine flour, branded and marked, and which he agreed to hold, subject to the sole order of Charles D. Gibson, or his assigns, and by the first opportunity to ship the same consigned to him, with conditions that said receipt remained

attached to the following certificate, referring to the property described in such receipt: I hereby certify that I have drawn my draft for $2,250, dated October 27, 1847, payable December 26–29, and numbered twelve, on said Charles D. Gibson, against the property described in receipt herewith, numbered 12, by F. H. DeWolf. This receipt and certificate shall remain attached to said draft, and shall be evidence of a lien on the said property in favor of the holders of said draft until payment; but reserving to the consignee named in this receipt and certificate, the right to sell the same upon receipt, holding the proceeds, instead of said property, in trust for the holders of said draft. Fitz Henry DeWolf. On the margin of this certificate was written, " Consignee, Charles Dana Gibson, Boston." A draft drawn by said DeWolf on said Gibson, was also annexed, being described as No. 12, corresponding with the number of the receipt and certificate above, for $2,250, and drawn " against the flour in the warehouse receipt." This draft was discounted by the Michigan State Bank, and with the warehouse receipt and certificate accompanying, was forwarded by the bank to Boston, presented to Gibson, and by him accepted. The draft was presented at maturity for payment, but has never been paid.

These documents all bear one and the same date, are parts of one transaction, refer to each other, and must be construed together. The intent is clear and manifest, that these specific barrels, branded, marked, and numbered, and so capable of being identified and distinguished, should stand as collateral security for that draft. Notice is given to Gibson, the consignee. He could only know of the deposit, pledge, and intended consignment to himself, by a presentation of the documents; and his acceptance of the draft was an assent to take the consignment, upon the terms proposed. It is an old rule of mercantile law, that when goods are consigned to a person, with notice that a draft is drawn against it by the consignor, in favor of a third person, the consignee cannot accept the consignment and refuse to accept the draft. But here he did, in terms, accept the draft, as drawn against that consignment. It is not necessary to determine at what precise time

the change of property was effected by discounting the draft, upon the credit of this peculiar form of pledge; it is sufficient that he who had the *jus disponendi* agreed that the person discounting his draft should have the property as security, and consigned it to Gibson, stating to him the purpose for which it was placed in his possession, to sell it and from the proceeds pay to the plaintiff, or other holder of the draft, the amount of it, and this gave a special property in the flour to such holder.

When the notice of the intended consignment was given to the consignee, Gibson, and he assented to it, he assented to receive it on account of the bank as holder of his acceptance; he became their agent to receive, hold, sell, and account for the flour, and from that time they became the owners of the property. It is not necessary to hold that they were absolute owners; it is enough that they had a right of property and of possession to secure the payment of the particular draft, and the right of the plaintiff as former owner of the specific property had become divested, and his right remained only to the surplus money which might remain after a sale of the flour and a payment of the draft from the proceeds. The ground of defence in the present case is, that supposing the plaintiff is correct in holding that the defendants taking a pledge of these goods from a factor and consignee, for sale, derived no title to the goods, but on the contrary, by such an attempt to pledge this flour, the consignee forfeited his own lien on it, still that the conversion was not a conversion of the property of DeWolf, and that he cannot maintain this action. The court are of opinion that this defence is well maintained, and that the illegality of the transaction by which the defendants acquired the possession of the property and converted it to their own use, is of no importance to the plaintiff; because, whatever of wrong there may be in this transaction on the part of the defendants, the plaintiff is not the proper party to obtain redress by a suit. This depends upon the question whether enough was done, in the present case, to divest the ownership of the plaintiff, and vest the special property in the barrels of flour in the holder of this

draft. It is very obvious from the facts proved, that the plaintiff intended so to part with these specific barrels of flour, as security for this specific draft; and this could be done only by parting with the control and disposing power of it in himself, and vesting it in such holder, or in some agent for his use. The same person may be agent to take and hold possession both for buyer and seller. If goods are in the warehouse of a third person, the owner holding the receipt of the warehouseman, a delivery of such receipt, upon a contract of sale or hypothecation by the vendor to the vendee or pledgee, and notice of it to the warehouseman, especially if he assents, makes him agent for the vendee or pledgee, and amounts to a good constructive delivery, because it changes the possession and dominion. In this case it is obvious that in the first instance when the receipt was given, as security for this draft, it was the vendor's or pledgor's own receipt, so that he still remained in possession. Whether the fact of giving such receipt would convert the vendor into a warehouseman, and whether such holding of possession in another capacity would be a good delivery, may be a subject of question ; but it was recently held, upon very high authority, that such a receipt given by the seller of goods, who had received his pay for them, with an agreement to forward them upon the opening of the canal, would amount to such a constructive delivery as to transfer the property and possession to the vendee. This was placed somewhat upon the nature of the western produce trade, and the customs and usages which have grown up respecting it. *Gibson* v. *Stevens*, 8 How. 384. Some important points were determined in this case. It was considered, under the circumstances, that such warehouse receipt given by the seller to the purchaser, was a good delivery ; that a transfer of such receipt, without a formal assignment, upon a contract of sale absolutely, or as security for money advanced, was a good transfer of the property, and constructive possession thereof; and that, as respects the legal title, there can be no distinction between the advance of money made on the credit of this documentary evidence of property and the case of an actual purchase. To the extent of such ad-

vances, the party making them was a purchaser, and the legal title was conveyed to him to protect his advances. It is not like the lien of a factor, but a legal title and right of property passes to the one who thus advances the money. See also the case of *Grove* v. *Brien*, 8 How. 429.

Recent English authorities lead to the same result. " If," says Parke, B., in *Bryans* v. *Nix*, 4 Mees. & Wels. 791, " the intention of the parties to pass the property, whether absolute or special, in certain ascertained chattels, is established, and they are in the hands of a depositary, no matter whether that depositary be a common carrier, or shipmaster, employed by the consignor or a third person, and the chattels are so placed, on account of the person who is to have that property, and the depositary assents, it is enough; and it matters not by what documents this is effected."

In the present case, it is manifest from the whole tenor of the transaction, that the property should stand conditionally bound to the holder of the draft; that it was to be placed in the hands of Gibson, as consignee, for sale, but until a sale, to hold for the holder of the draft. To this Gibson assented, and thereupon became agent for such holder. The terms of the certificate are, that it shall remain attached to said draft, as evidence of a lien on the property in favor of the holder, until payment. This gave to the consignee named, Gibson, the power of a factor to sell the same upon its receipt, holding the proceeds, instead of said property, accountable as agent to the holders of the draft, and to the consignor for the balance. It is very manifest from the whole language of these documents, and the delivery of them as evidence of property, that until a sale the consignee held the flour as the property of the holders of the draft, and his possession was their possession. So, when goods are forwarded by a debtor to his creditor to meet advances, and delivered to a carrier, it is a transfer of the property, though the goods are to pass through the hands of those who have claims upon the consignor; yet they are considered so far the property of the consignee that he may maintain trover for them. *Evans* v. *Nichol*, 3 Man. & Gr. 614.

On the whole, this court are of opinion that the plaintiff had so far parted with the right of property, and the right of possession of these barrels of flour, at the time of the alleged conversion of them by the defendants, by taking them as security from Gibson, the consignee, who, as factor, had no right to pledge them, and the right of property and of possession had so far vested in the holders of the draft, for security of which, the plaintiff had pledged them, that he cannot maintain this action.    *Verdict set aside.*