WINSOR HATCH, 2d, *vs.* JOHN W. LINCOLN.

B. advanced money to A. upon A.'s agreement to sell him two hundred barrels of flour, of certain kinds, for which the money was to be a partial payment. A. bought the flour in Albany in his own name, and forwarded it by railroad, deliverable to his order in Boston, but sent a written order to B., addressed to the carrier, directing the delivery to be made to B. This order was presented to the carrier by B. and accepted, and B. paid the freight, giving directions as to the delivery upon arrival of the flour. The next day, and while the flour was on the way, it was attached as the property of A. *Held,* that there had been a sufficient constructive delivery, and that B. could hold the property against the attachment.

THIS action was decided for the plaintiff by the court of common pleas upon an agreed statement of facts, the material portion of which appears in the opinion of this court, to which the defendant appealed.

*B. F. Brooks & E. Wright,* for the defendant.

*C. A. Welch,* for the plaintiff.

SHAW, C. J. Trespass to recover the value of one hundred barrels of flour, attached by one of the deputies of the defendant, the late sheriff of Worcester, and alleged by the plaintiff to be his property. Many of the facts are the same as in the case of *Hatch* v. *Bayley,* decided at the present term, *ante,* p. 27. The flour was attached at Worcester as the property of ·J. B. Hoogs, in the Western Railroad cars, on its way from Albany to Boston. The question is, whether the title to this flour had so far vested in the plaintiff at the time of the attachment, that it could not be attached and held as the property of Hoogs.

The plaintiff advanced to Hoogs, on the 15th November, at Boston, $650 in a note, received by the said Hoogs as such, which he negotiated and received the money for, and which the plaintiff paid at maturity. That advance was made to Hoogs, going west to purchase flour, on an agreement that Hoogs would send to the plaintiff two hundred barrels flour, one hundred of the Akron brand, at $5.75 per barrel, and one hundred of the White Star Mills brand, at $5.25, to be delivered to the plaintiff in Boston. Hoogs, on his arrival at

Albany, purchased in his own name one hundred barrels of the brand last named, and twenty-three barrels of the brand first named, being, as he wrote the plaintiff, all he could obtain of that brand. The purchase was made 20th November, and on the 21st, by order of Hoogs, the seller sent the one hundred and twenty-three barrels to the depot of the Western Railroad company, with orders to send them to Boston, deliverable to Hoogs; and they were entered on the way-bill accordingly, which was dated November 22, and headed Western Railroad, and on which were entered the two parcels, to wit: one hundred White Star, and twenty-three of Akron, the number of the cars in which they were respectively placed, the amount of freight to be paid, and that both were to be delivered to said Hoogs in Boston. On the 20th or 21st November, a letter was addressed by Hoogs to the plaintiff, informing him, that this flour was placed in the depot of the Western Railroad to be forwarded, and sending him an order dated 20th November, addressed to the railroad company, requesting them to deliver to the plaintiff one hundred barrels White Mills flour, twenty-three Akron, which the plaintiff received on the 22d, and communicated to the proper officer of the Boston and Worcester Railroad company in Boston. The two railroad companies, by an agreement between themselves, form one line of transportation, and property delivered at either is carried as if it were one line. The officer of the company in Boston took notice of the order, filed it, and took the directions of the plaintiff to deliver it on arrival at his store, by a side-track laid by the agreement of the company with the owners of the store, for the purpose of thus delivering freight. The plaintiff paid the freight on the 23d, but all the other acts above mentioned were done on the 22d, and the flour was not attached in Worcester till about eleven o'clock of the 23d.

Under these circumstances, the court are of opinion, that the property was vested in the plaintiff, and not liable to be attached by a creditor of Hoogs. All the cases and principles in regard to the right of stoppage *in transitu* may be laid out of the case. That right is an extension of a right

of lien for the price, where goods are sold on credit, and forwarded to the vendee by a common carrier; in such case, until they have reached their destination, the vendor or assignor may stop them if he can, and thus regain his possession and his lien. But, in the present case, the flour had been paid for in advance by the plaintiff, by a note agreed to be taken by Hoogs as cash. On the receipt of that note, Hoogs gave the plaintiff a receipt to the following effect: " Boston, November 15th, 1850. Received of W. Hatch, his note for $650, sixty days, which I agree to make good at maturity." This undertaking " to make good," as we understand, is, to provide the means to take up, or furnish the plaintiff funds for the purpose. But collateral to that, he had made the agreement, above mentioned, to sell the plaintiff two hundred barrels of flour, at fixed prices, towards the payment of which this note should go on account. This contract of sale and purchase was entirely distinct and collateral, and therefore might be proved by parol evidence. But the manifest intention of both parties was, that the transmission of this flour should be the means provided for the repayment of this advance. Whilst this agreement was executory, it could not have been enforced by action on account of the statute of frauds. In that event, the remedy of the plaintiff would have been on the above obligation to provide for the payment. But when the flour was bought and delivered to the carrier, and an order on the carrier given to the plaintiff to receive it, the agreement to sell was no longer executory; it was an executed sale agreeably to the parol promise; and the only remaining question is, whether there was such a constructive delivery, as to complete the sale, for which the price had been already advanced.

When the goods were delivered to the carrier for transportation by Hoogs, and a way-bill taken by which the goods were made deliverable to himself, they were still under his control, and he might have ordered the delivery to another person, and the plaintiff could not hold them. But when he made and transmitted to the plaintiff an order making them deliverable to the plaintiff, he gave notice thereof to the com-

pany, and they, by their authorized agent, assented to the order, and took his directions as to the place of delivery on arrival, to which they acceded; the goods were effectually placed under the power and control of the plaintiff, what was an executory agreement for a sale became an executed sale, and the property vested in the plaintiff. The carriers, who before that time were the agents of the consignor to keep and transport the goods for him, became from the time of such order, notice to the company, and their assent to it, the agents of the plaintiff; their possession was his possession; the contract of sale was consummated by a delivery into the possession of the plaintiff.

In such case, it is immaterial whether receipts in the nature of bills of lading are given or not; any evidence which shows that the goods have been delivered to the carrier, and the carrier, either by the terms of the original receipt or by the order of the person consigning them, agrees to hold them for the plaintiff, this is an effectual delivery, by whatever instruments or documents such agreement is proved. It is a transmutation of possession by making the actual holder, who was agent for the consignor, the agent of the consignee. *Bryans* v. *Nix,* 4 Mees. & Wels. 775. One passage from the judgment of Baron Parke is so applicable, that I desire to cite it: " If the intention of the parties to pass the property, whether absolute or special," (*i. e.* whether previously paid for, or consigned to meet advances previously made,) " in certain ascertained chattels, is established, and they are placed in the hands of a depositary, no matter whether such depositary be a common carrier, or shipmaster employed by the consignor, or a third person, and the chattels are so placed on account of the person who is to have that property, and the depositary assents, it is enough; nor is it material whether the person who is to have the property be a factor or not." In this case, it appeared that oats were placed on a canal-boat in Ireland, to be sent to Dublin, and thence to the plaintiffs at Liverpool, and having been thus placed on board a canal-boat and a receipt given, that receipt was transmitted to the plaintiffs, who accepted a draft on the credit of it.

Similar principles were adopted in the case of *Evans* v *Nichol,* 3 Man. & Gr. 614. Like doctrines were affirmed, if they were not, indeed, carried somewhat farther, in two recent cases, by the supreme court of the United States, laying down rules peculiarly applicable to the western trade of the United States, arising out of the peculiar exigencies of that commerce. *Gibson* v. *Stevens,* 8 How. 384; *Grove* v. *Brien,* 8 How. 429. It appears to us, that the facts in the present case meet and satisfy the exigencies thus required to pass the property. They show the intention of Hoogs to pass the property to the plaintiff, by buying and forwarding it pursuant to his agreement, and by placing it in the hands of a common carrier; and though in the first instance so placed in his own name, yet he gave an order to the plaintiff to receive it, which order was notified to the company and assented to by their authorized agent.

An argument was founded upon a circumstance stated in the statement of facts, as coming from a witness of the original agreement, that the flour was to be purchased and delivered to the plaintiff at Boston, from which it was inferred that until a delivery in Boston, the property would not pass. But when the property was put on its passage to Boston, and the consignor chose to put it in the absolute power of the consignee by an order to deliver it to him, and that order was received by the plaintiff and accepted, by being acted on and notified to the company, the property vested in the consignee, although, if he had objected, and insisted on the terms of the contract, he might have insisted on a delivery in Boston, before he would be bound to accept it. *Greaves* v. *Hepke,* 2 Barn. & Ald. 131; *Holl* v. *Griffin,* 10 Bing. 246.        *Judgment for the plaintiff.*