87  319
2ap128

MARSHALL S. DRIGGS, Appellant, *v.* ROBERT J. DEAN and Another, Respondents.

*Warehouse receipts — pledged as collateral security — liability of the pledgee for subsesequent storage.*

In an action brought by a public warehouseman to recover storage on a number of barrels of cement, it appeared that in March, 1885, one Max Von Angern, being the owner of the cement, placed the same in the plaintiff's warehouse upon storage, agreeing to pay therefor a certain sum per barrel per month, and took two warehouse receipts therefor. On these receipts were indorsed the conditions upon which the goods were held on storage, in accordance with the provisions of chapter 326 of the Laws of 1858, in order that the receipts might be transferred by indorsement thereon, and that any person to whom they might be so transferred should be deemed and taken to be the owner of the goods therein specified so far as to give validity to any pledge, lien or transfer made or credited.

In July, 1885, Von Angern made his promissory note payable to a bank, and pledged as collateral security for the payment thereof the two warehouse receipts. The note was guaranteed by the defendants. Von Angern failed to pay the note upon maturity, and the bank called upon the defendants to pay the same, which they did, the bank delivering to the defendants the promissory note and the two warehouse receipts.

On October 24, 1885, one of the defendants went to the warehouse of the plaintiff with the receipts, showed the plaintiff the receipts, and told him that the defendants had loaned money on the goods to Von Angern, who had defaulted, and that they had been obliged to take the goods. Such defendant, upon being asked by plaintiff's bookkeeper whether he would have a bill for the storage, replied that he would, which bill was accordingly made out and delivered to the defendant. This bill was for accrued storage up to the 24th of October, 1885. Between October 24, 1885, and July 6, 1891, the cement remained in the warehouse of the plaintiff, during which time the defendants made and delivered to various persons orders for the inspection and examination of the goods with a view to effecting a sale thereof. The plaintiff accepted the orders, and in pursuance thereof exhibited the goods to the parties presenting them. The goods were sold in July, 1891, and were not worth the amount of the note for which the defendants held the warehouse receipts as collateral.

The plaintiff sought to recover for storing the cement from October 24, 1885, until the cement was sold.

*Held,* that upon the transfer and delivery of the warehouse receipts to the defendants, under the terms of the receipts and the conditions of storage, they became the owners of the property covered thereby and entitled to the possession thereof;

That the plaintiff became their bailee and was liable to them for the proper care of the property, and thereafter bound to hold it subject to their order and demand;

That as the defendants took possession of the cement on October 24, 1885, at which time they requested that the bill for past storage should be made out, a contract for subsequent storage was thereby implied, and the plaintiff was entitled to recover.

Appeal by the plaintiff, Marshall S. Driggs, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 6th day of March, 1895, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the New York Circuit, and also from an order entered in said clerk's office on the 8th day of March, 1895, denying his motion for a new trial made upon the minutes.

*John Berry*, for the appellant.

*L. E. Warren*, for the respondents.

O'Brien, J. :

This action was brought to recover storage on 2,463 barrels of cement in the warehouse of the plaintiff, who was a public warehouseman in the city of New York. In March, 1885, one Max Von Angern, being the owner of the cement, placed the same in plaintiff's warehouse upon storage, agreeing to pay therefor at the rate of four cents a barrel per month, and took two warehouse receipts therefor, one for 1,500 barrels and one for 963 barrels. On these receipts were indorsed conditions upon which the goods were held on storage in accordance with the provisions of chapter 326 of the Laws of 1858, that the receipts might be transferred by indorsement thereof, and that any person to whom they might be so transferred should be deemed and taken to be the owner of the goods therein specified, so far as to give validity to any pledge, lien or transfer made or created. Thereafter, and in July, 1885, Von Angern made his promissory note for $3,500 payable to the Chemical National Bank, and pledged as collateral security for the payment of said note the two warehouse receipts. The note was guaranteed by the defendants. When it became due Von Angern failed to pay it and the bank called upon defendants to pay, which they did. Whereupon the Chemical Bank delivered to defendants the promissory note and the two warehouse receipts which were

then held by said bank as collateral for the payment of the note. On October 24, 1885, the defendant Wills went to the warehouse of the plaintiff with the receipts, saw the plaintiff, showed him the receipts, told him the defendants had loaned money on the goods to Von Angern who had defaulted, and that defendants had been obliged to take the goods. Wills was asked by plaintiff's bookkeeper whether he should have the bills for storage on the goods made out. Wills told him to do so, and they were accordingly made out by the plaintiff and delivered by the bookkeeper to Wills, who took them away with him. These bills were for accrued storage from March 28 to October 24, 1885. They were not paid, and the cement remained in the warehouse from October 24, 1885, until July 6, 1891, during which time defendants made and delivered to various persons their orders upon plaintiff for the inspection and examination of the goods with the object of effecting a sale thereof, which orders plaintiff accepted, and in pursuance thereof exhibited the goods to parties presenting such orders and permitted an examination. The goods when sold in July, 1891, were not worth the amount of the note for which the defendants held the warehouse receipts as collateral.

Upon these facts plaintiff sought to recover for storing the cement from October 24, 1885, until plaintiff sold them on the 6th day of July, 1891; but at the close of plaintiff's case the defendants moved to dismiss the complaint upon the grounds that no contract, specific or implied, to pay the storage had been shown; that no liability existed on the part of the defendants to pay the storage upon the goods, and that the defendants were not the owners of the goods, their interest being merely that of owners of the warehouse receipts as collateral security for the payment of the debt. These grounds the trial judge deemed sufficient and granted the motion to dismiss the complaint.

The question presented upon this appeal is, did the plaintiff make a sufficient showing to charge the defendants with liability for the storage between October 24, 1885, when the defendant Wills, as narrated, called at the warehouse, and the 6th day of July, 1891, when the goods were sold? If, on October 24, 1885, the defendants were the owners of the property and entitled to possession thereof by the

transfer and delivery to them of the warehouse receipts, and then asserted such ownership by notifying plaintiff thereof and assuming rights pertaining thereto, it seems reasonably free from doubt, as contended by appellant, that under such circumstances, if the defendants allowed the cement to remain on storage with the plaintiff's consent, and thereafter made their orders on the plaintiff for the inspection and examination of the same, which were executed by the plaintiff, the plaintiff having thus become a bailee for hire, holding the property for them, subject to their order and liable to them for the proper care and storage thereof, the defendants as bailors became liable to pay him for such care and storage. The inferences and assumptions which we have indulged in are, of course, all dependent upon the conclusion to be reached upon the crucial question presented on this appeal as to whether or not when the defendants, by the payment of the note became subrogated to all the rights of the bank, they became the owners of the property covered by the receipts. It is not claimed that the defendants at any time expressly requested the plaintiff to store the goods or promised to pay for the storage, and there is no question but that originally the receipts were transferred to the bank as collateral security for the payment of the note, and that upon its payment by the defendants the latter received a transfer and delivery of the receipts. The liability for the storage, therefore, must be predicated upon the theory that by the transfer and delivery of the receipts defendants became the owners of the property mentioned therein, and that plaintiff became their bailee, liable to them for the proper care of the property, and that through the relation of a bailee and bailor thus created, the former held the property subject to the order and demand of the bailor, and the latter impliedly agreed to pay the storage.

It will thus be seen, as already said, that the real question upon this appeal is, did the defendants, on the transfer and delivery of the warehouse receipts to them, become the owners of the property covered by such receipts? We do not regard this as being any longer an open question. In Colebrooke on Collateral Securities it is said :

"Section 413. * * * The transfer for value, as collateral security, of warehouse receipts, by indorsement and delivery, or by delivery only, where such receipts are made payable to 'holder' or

' only upon the return of this receipt,' vests the legal title and possession of the property in the pledgee and is equivalent to an actual delivery of the property. The warehouseman at once, without notice, becomes the bailee of the lender of money upon the receipt he has issued. The title to the property passes by such transfer to the pledgee, under the law merchant, independent of any statute. A formal assignment of the document is not required, as the indorsement of itself sufficiently indicates the intention of the pledgor to pass the title and possession." * * *

" Section 414. * * * The pledgee of warehouse receipts, receiving the same, with or without indorsement, as collateral upon a *bona fide* loan or discount of commercial paper, stands in the same privileged position as a *bona fide* purchaser for value of like receipts. An indefeasible title to the property represented by the receipts is vested in the *bona fide* pledgee for value and he is entitled to its possession. * * * Such innocent pledgee is a *bona fide* holder for value in the usual course of business and has something more than a mere lien for his advances, taking the title to the property and the right to its actual possession. (Citing *Gibson* v. *Stevens*, 8 How. [U. S.] 384.) * * * The pledgee of warehouse receipts is under no obligation to notify the warehouseman of the transfer to him of such receipts as collateral security."

Among the many authorities in support of the rule laid down in the text the main reliance is placed upon the leading case of *Gibson* v. *Stevens* (8 How. [U. S.] 384). In that case McQueen and McKay were the holders of warehouse receipts of certain pork and flour then on storage Gibson advanced money to them and they delivered to him the warehouse receipts as security for the loan.

TANEY, Ch. J., delivering the opinion of the court, said: " What was the legal effect of the indorsement and delivery of the warehouse documents in consideration of the advance of money he then made to McQueen and McKay? In the opinion of the court it transferred to him the legal title and constructive possession of the property, and the warehouseman from the time of this transfer became his bailee and held the pork and flour for him. The delivery of the evidences of title and the orders indorsed upon them was equivalent, in the then situation of the property, to the delivery of the property itself. * * * It is hardly necessary to refer to

adjudged cases to prove a doctrine so familiar in the courts.　 *　 *　 *
Nor, as respects the legal title, can there be any distinction between
the advance made by Gibson and the case of an actual purchaser.
To the extent of his advances he is a purchaser, and the legal title
was conveyed to him to protect his advances. It is not the lien of a
factor.　 *　 *　 *　 In the case before us the title of Gibson is not a
mere lien. The legal title, the right of property, passed to him."

In *Hoyt* v. *Hartford Fire Ins. Co.* (26 Hun, 416), which was a
decision of this General Term (affd., without opinion, 96 N. Y. 650),
the case of *Gibson* v. *Stevens* was referred to, cited and followed.
And in *Niagara County Nat. Bank* v. *Lord* (33 Hun, 561), which
was a decision of the General Term in the fifth department, the
cases of *Gibson* v. *Stevens* and *Hoyt* v. *Hartford Fire Ins. Co.* were
cited and approved. In addition we have been referred to decisions
in many States in which *Gibson* v. *Stevens* has been followed ; but
without regard to them we think the approval which it has received
in this State in the cases cited, one of which has been affirmed by
the Court of Appeals, leaves it no longer a debatable question.

Were it an open question it might be doubted if a mere pledgee
of personal property, to whom the title was transferred as collateral
security, thereby became owner to an extent that would render him
liable for charges for storage. If, upon acquiring such legal title,
the pledgee, with reference to the warehouseman, should exercise
such acts of control and ownership over the property as would be
inconsistent with any position other than such as would be occupied
by the real and absolute owner, then such conduct, coupled with the
legal title, would be sufficient to create an obligation to pay the
storage. But under such a rule of law, considering the attitude of
the defendants here with respect to the property, in assuming
dominion and control and direction of the same, conditions are
present which create in the case at bar a liability for the storage.
Whatever, therefore, may be the individual views of the members
of the court upon the question as to whether a mere pledgee, hold-
ing title as collateral security, is liable for storage, there is con-
trolling authority upon the facts here disclosed respecting the con-
duct of the defendants towards the property which favors the plain-
tiff's view, that on the transfer and delivery of the warehouse
receipts to the defendants, under the terms of the receipts and the

conditions of storage, they became the owners of the property covered by the receipts and entitled to the possession thereof, and the plaintiff became their bailee, liable to them for the proper care of the property and thereafter bound to hold it subject to their order and demand; and when, in recognition of such relation, the defendants assumed to and did exercise acts of ownership and control they rendered themselves liable for the storage; because such included the reciprocal relations of bailor and bailee, and an implied obligation upon the former, growing out of such relation and conduct, to pay the storage.

We think, therefore, that the learned judge was in error in dismissing the complaint, and the judgment must be reversed and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., PARKER, J.:

We concur in the result reached by Mr. Justice O'BRIEN in his opinion, and in the following propositions which led to it:

*First.* That the transfer of the warehouse receipts by indorsement and delivery vested in these defendants the legal title and right of possession.

*Second.* That the defendant took possession of the merchandise pledged on October 24, 1885, at which time he requested that bills for past storage should be made out.

*Third.* That a contract for subsequent storage was thereby implied.

As the action was brought to recover such storage, it was error to dismiss the complaint.

Judgment reversed, new trial ordered, costs to appellant to abide event.