# Storey, Appellant, *v.* Hershey.

*Carriers—Common carriers—Bills of lading—Delivery.*

Bills of lading are symbols of property, and when properly indorsed and delivered operate as a constructive delivery of the property itself, which serves all the purposes of an actual possession. When according to the terms of the bill of lading the property is to be delivered to the order of the consignor, the carrier becomes the agent of the consignor for the purpose of transportation, and the possession of the agent is the possession of the consignor. When the consignor indorses and delivers the bill to another, it works a constructive transmutation of possession, and the carrier who was agent for the consignor becomes the agent of his indorsee. There must, however, be an actual possession of the property in the agent in order to sustain a symbolic delivery by the principal.

When the parties to a transfer of a bill of lading know that the property has, prior to the transfer, been by legal process taken from the possession of the carrier, the indorsement and delivery of the bill of lading cannot operate as a transfer of the possession of the property.

A contractor for railroad work agreed in writing to sell nineteen flat cars, and to deliver them at a point designated, further agreeing to put at his own expense the cars in such shape that they would be accepted by a railroad company for shipment. The vendor procured a bill of lading for the nineteen cars made to the order of himself, " notify consignee," named who were the vendees. The bill of lading was duly indorsed, and was attached to a draft and mailed to the consignees. Subsequently the railroad company notified the contractor that four of the cars were not in a condition to be accepted. The contractor thereupon paid the company money for the repair of the cars, and they were sent to the repair yard. The other fifteen cars were forwarded in accordance with the terms of the bill of lading. Before the repairs of the four cars were finished, they were levied upon by the sheriff as the property of the contractor. When the fifteen cars reached their destination, the consignees were informed of the execution levied upon the four cars, and they thereupon entered into an agreement with the contractor by which they accepted the fifteen cars and paid a portion of the draft, and agreed to pay the balance when the four cars were delivered. *Held,* that the consignees named in the draft had no title to the four cars as against the plaintiff in the execution.

Argued Nov. 6, 1901. Appeal, No. 55, Oct. T., 1901, by plaintiffs, from judgment of C. P. Huntingdon Co., Dec. T., 1899, No. 22, on verdict for defendant in case of Storey, Douglass & Brode v. L. S. Henshey, Wm. W. Blake and B. Victor. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Feigned issue to determine title to four flat cars.   Before BAILEY, P. J.

The opinion of the Superior Court states the case.

Verdict and judgment for defendants for $621.27.   Plaintiff appealed.

*Error assigned* was in giving binding instructions to defendant.

*W. L. Pascoe*, of *Stevens & Pascoe*, with him *H. H. Waite*, for appellant.—A bill of lading is a symbol of property in the chattel, and when properly indorsed and delivered, operates in law, as a delivery of the chattel itself: Hieskell v. Farmers' & Mechanics' Nat. Bank, 89 Pa. 159; Penna. R. R. Co. v. Stern & Spiegel, 119 Pa. 24; Griffith v. Ingledew, 6 S. & R. 429; Schumacher v. Eby, 24 Pa. 521; Harrison v. Mora, 150 Pa. 481; Conard v. Atlantic Ins. Co., 1 Peters, 386; Chandler v. Belden, 18 Johnson, 157; First Nat. Bank v. Mt. Pleasant Milling Co., 103 Iowa, 518; 72 N. W. Repr. 689; Ayres, etc.; Co. v. Dorsey Produce Co., 101 Iowa, 141; 70 N. W. Repr. 111; Finch v. Gregg, 126 N. C. 176; 35 S. E. Repr. 251; Hatch v. Lincoln, 66 Mass. 31.

Title to the chattels so acquired is good against attaching creditors: Schumacher v. E by, 24 Pa.521; Harrison v. Mora, 150 Pa. 481; Conard v. Atlantic Ins. Co., 1 Peters, 445; Gibson v. Stevens, 8 Howard, 384; Hatch v. Bayley, 66 Mass. 27; Hatch v. Lincoln, 66 Mass. 31; Finch v. Gregg, 126 N. C. 176; 35 S. E. Repr. 251; Valle v. Cerre, 36 Mo. 575; Wade v. Hamilton, 30 Ga. 450.

Creditors stand in the debtor's shoes having no higher rights to the property than he has: Baugh v. Kirkpatrick, 54 Pa. 84; Harrison v. Mora, 150 Pa. 491; Skilling v. Bollman, 73 Mo. 665; Fifth Nat. Bank of Chicago v. Bayley, 115 Mass. 228.

*W. M. Henderson*, with him *R. A. Henderson* and *Richard Williamson*, for appellees.—If a vendor sells goods undertaking to make delivery himself, at a distant place, the carrier is the vendor's agent and delivery is not complete until the goods arrive at the place designated: Benjamin on Sales (1889 ed.), sec. 1040; Dunlop v. Lambert, 6 Cl. & Fin. 600; McNeal v. Braun, 53 N. J.

Law, 617 ; Wenger v. Barnhart, 55 Pa. 300 ; Dewart v. Clement, 48 Pa. 413.

We contend that the bill of lading had nothing whatever to do with the four cars in controversy, so far as their delivery and the passage of title thereto was concerned.

OPINION BY W. D. PORTER, J., March 14, 1902:

The appellants were claimants in a sheriff's interpleader proceeding, and the burden was upon them to show title to and possession of the property in question, consisting of four flat cars which had been owned and used by E. C. Wells, the execution defendant. The cars were in the possession of Wells, on August 24, 1899, at a point along the line of the Pennsylvania Railroad, about two and one half miles west of Huntingdon, where Wells, who was a contractor, was engaged upon certain work for the railroad company. Wells, through his agent, on the day mentioned, entered into a written contract with the appellants for the sale of his machinery and plant, consisting among other things of nineteen flat cars, the cars now in question being among the number. By the terms of this written agreement Wells was to deliver the property at Pittsburg, and the plaintiffs were to pay $5,500 for the same, "terms cash draft with bill of lading." The contract contained an express provision that Wells should put the cars in such shape that they would be accepted by the railroad company for shipment, at his own expense. The cars in question never were delivered at Pittsburg, and if they ever became the property of the appellants it was not due to the covenants of this written agreement, but to the manner in which the parties subsequently dealt.

The agent of Wells, on August 26, 1899, procured from the freight agent of the Pennsylvania Railroad Company, at Huntingdon, a bill of lading, under the provisions of which the nineteen flat cars, including the four now in question, were consigned to the "Order E. C. Wells, notify consignee ; Storey, Douglass & Brode. Destination, Place, Pana county, State, Illinois. Route ; B. & O., S. W., via Cincinnati, Ohio." This bill of lading duly indorsed was attached to a draft for $5,500 on the appellants and on August 27, 1899, mailed by the agent of Wells to a bank at Cincinnati. The agent of Wells was subsequently

notified by the railroad company that the four cars now in question needed repairs and were not in condition to be accepted for shipment, and the railroad company declined to make repairs unless paid in advance for doing so. Wells furnished to his agent the necessary funds, the latter paid the amount to the railroad company, and the cars were sent into the yard of the company at Huntingdon. The other fifteen cars had been forwarded in accordance with the terms of the bill of lading. The repairs on the four cars had not been completed when they were levied upon by the sheriff of Huntingdon county, under a writ of fieri facias against Wells at suit of the Standard Supply and Equipment Company. The record of this execution was offered in evidence but the appellants have failed to print it in their paper-book and the date of the levy does not clearly appear, but it certainly was before September 6, 1899. The appellants refused to pay the draft attached to the bill of lading, which they had the right to do, for under the terms of the written agreement they were entitled to have all the property delivered at Pittsburg. Wells sent his agent to Cincinnati and he there, on September 6, 1899, met Story, one of the appellants. They found upon investigation that the fifteen cars which had been forwarded were then at Cincinnati. Story refused to lift the draft or bill of lading, giving as one reason for such action that an execution had been issued against the four cars at Huntingdon. Engel, the agent of Wells, testifies that he told Storey at that time that an execution had been issued in Huntingdon county against the four cars. They then went to the bank and Engel withdrew the draft with the bill of lading attached. It was then agreed between them that the appellants should accept the fifteen cars which were then in Cincinnati and pay the sum of $3,000 on account, and that the balance, $2,500, should be paid when the remaining four cars were delivered. Engel detached the bill of lading from the draft and delivered the former to Story, who then paid the $3,000. At the time Story received and accepted the bill of lading he knew that the sheriff of Huntingdon county had levied upon the four cars in question. Those cars remained in the custody of the sheriff of Huntingdon county and on September 8, 1899, were seized by the sheriff upon attachments at suit of Henshey and Blake, subject to the executions under which he already held the property.

Bills of lading are symbols of property, and when properly indorsed and delivered operate as a constructive delivery of the property itself, which serves all the purposes of an actual possession: Pennsylvania Railroad Company v. Stern & Spiegel, 119 Pa. 24; Harrison v. Mora, 150 Pa. 481; Hatch v. Lincoln, 66 Mass. 31. When according to the terms of the bill of lading the property is to be delivered to the order of the consignor, the carrier becomes the agent of the consignor for the purposes of transportation, and the possession of the agent is the possession of the consignor. When the consignor indorses and delivers the bill to another it works a constructive transmutation of possession and the carrier who was agent for the consignor becomes the agent of his indorsee. It is absolutely necessary for the purposes of commerce that property be committed to the actual possession of carriers or warehousemen, and that bills of lading and warehouse receipts pass as the symbols of the property which they represent. The possession of the agent is the possession of the principal. There must, however, be an actual possession of the property in the agent in order to sustain a symbolic delivery by the principal. When the parties to a transfer of the bill of lading know that the property has prior to the transfer been by legal process taken from the possession of the carrier the indorsement and delivery of the bill of lading cannot operate as a transfer of the possession of the property. The carrier no longer holds the property as agent for either of them; he does not hold the property at all. The delivery of the bill may invest the indorsee with rights against the carrier, but it cannot take the property out of the possession of the officer of the law. In the present case the written agreement of sale required the vendor to make the repairs necessary to put the cars into condition for shipment, he might do that work himself or procure it to be done by another. While that work was being done the cars were constructively in the possession of the vendor. Before the work was completed the cars were levied upon and passed into possession of the sheriff. The property having been taken out of the custody of the carrier it was no longer possible for the railroad company to deliver it, in accordance with the terms of the bill of lading, to the order of Wells, in Pana county, Illinois. The appellants knew this when the bill of lading was delivered to them by the

agent of Wells, and it is manifest that they did not believe that the transfer of the bill of lading invested them with the title to and possession of these four cars. They accepted the bill of lading for the purpose of obtaining possession of the fifteen cars which were then at Cincinnati, and expressly stipulated that they should not be required to pay the balance of the purchase money until the remaining cars had been delivered to them. This stipulation for a delivery in the future necessarily implied that it was not the intention of the parties that the delivery of the bill of lading should operate as a delivery of the cars in dispute. The cars were then in the railroad yard at Huntingdon, the repairs for which Wells was responsible had not been completed, they were not ready for transportation: Wenger v. Barnhart, 55 Pa. 300. The appellants did not in any view of the case acquire any right to the possession of the property until the bill of ladnig had been delivered to them, and they accepted it with notice that the property was not then in possession of the carrier. When the sheriff took possession of the cars they were still the property of Wells. The appellants not having taken any steps to take the property out of the possession of the sheriff and restore it to the carrier, it became bound by the several attachments under which it was seized.

The judgment is affirmed.

WILLIAM W. PORTER, J., dissents.