TEWKSBURY vs. SCHULENBERG and others.

PLEADING. *(1) Demurrer does not lie to prayer for relief.*

NAVIGABLE RIVERS. *(2) Power of legislature to authorize dams in such rivers. (3) Certain acts for damming a river held valid.*

CONSTRUCTION OF STATUTES. *(4, 5) Certain acts relating to " chartered dam companies " held inapplicable to dams built by natural persons, under charter.*

1. Under our statutes, a demurrer will not lie to a complaint upon the mere ground that it demands greater or other relief than that to which the facts alleged show plaintiff entitled. Thus, where it states a cause of action against the defendants personally, it is not demurrable for improperly demanding also a judgment to enforce an alleged lien for the amount claimed.

2. The legislature may authorize the construction and maintenance of dams upon navigable streams for the improvement of the navigability of such streams, and may authorize the persons constructing and maintaining such dams to collect reasonable tolls for the increased facilities thus furnished for travel and transportation; and it is not necessary that the acts authorizing such dams and tolls should expressly declare that the improvement of the navigation is their principal object.

3. The court takes notice that the capacity of many small navigable streams in this state to float logs and lumber to market has been greatly increased by the erection of dams across them (pursuant to legislative authority), to hold or discharge their waters as circumstances may require; and in view of the careful provisions of ch. 154 of 1874 and ch. 263 of 1876, in relation to the damming of Clam river by the plaintiff, showing that the legislature regarded the dams, slides, gates, etc., there provided for as important and necessary aids to the navigation of the stream, it holds those acts valid.

4. While the statutory rule of construction (R. S., ch. 5, sec. 12) declares that the word " person " may be applied to bodies politic and corporate, there is no statute or rule of construction by which the term " bodies politic and corporate," or " corporations," or other like terms, must necessarily extend to individuals.

5. Ch. 296 of 1876 provides that " no chartered dam company or log-driving association, or chartered log-driving company," in a certain district, shall have any right to collect any tolls for certain services upon logs, unless such logs shall have been scaled by the inspector of said district, and that such scaling shall be made " below the St. Croix boom," etc. The defendant, by his individual name, his heirs and assigns, are authorized by

acts of the legislature to maintain dams, etc., across a river in said district, and charge tolls for services like those described in said act of 1876. *Held*, that the terms of the provision above recited do not apply to him; especially as the other provisions of the act carefully distinguish between "persons" and "corporations."

APPEAL from the Circuit Court for *St. Croix* County.

The action was brought to recover tolls for aiding in driving, and for passing over slides in plaintiff's dams on the north fork of Clam river, in Barron county, a quantity of logs belonging to the defendants. The dams were erected and the tolls are claimed by virtue of ch. 154, Laws of 1874, as amended by ch. 263, Laws of 1876.

Sec. 1 of ch. 154 authorizes the plaintiff, his heirs and assigns, to maintain a dam or dams across the north fork of Clam river at two certain points designated in the section, "*provided*, that such dam or dams shall not raise the water to exceed twelve feet, and if the water so raised shall flow any lands not owned by said party or his assigns, he or they shall be liable for all damages, to be recovered by suit in the circuit court."

Sec. 2 is as follows: "The aforesaid *Tewksbury*, his heirs or assigns, shall build suitable slides in said dam or dams, for running logs, timber and lumber over the same, and shall keep the same in repair; they shall be kept open at all times when said river is at a 'driving stage,' and there are logs, timber or lumber to run over said dams, and when it is not necessary to hold the water back for the purpose of driving or flooding logs, timber or lumber below the said dam or dams, for which purposes flood-gates shall be kept in repair and built in such manner as to shut in such manner as the case may require, to flood said logs, timber and lumber."

Sec. 3 provides that the plaintiff, his heirs and assigns, shall enjoy the privileges granted in the act for the term of ten years.

Sec. 4, as amended by ch. 263, Laws of 1876, is as follows:

"When the aforesaid *Tewksbury*, his heirs or assigns, shall have completed the said dam or dams as aforesaid, the said *Tewksbury*, his heirs or assigns, are hereby authorized and empowered to receive and collect from the owners of all lumber, timber and logs, passing over such slide or driven by the aid of such dams, as a compensation for keeping up and maintaining such dam or dams, the sum of fifteen cents per thousand feet, board measure, the amount to be ascertained by scale on landings in the woods; and the aforesaid *Tewksbury*, his heirs and assigns, shall have a lien on all logs, timber and lumber, run over said dam or dams, or driven by the aid thereof, until the charges aforesaid shall be fully paid, which lien may be enforced in the same manner as the lien of laborers on logs; *provided*, that the said *Tewksbury*, his heirs and assigns, shall at all times comply with the provisions of section two of this act."

Sec. 5 confers upon the plaintiff, his heirs and assigns, the control of the dams, slides and gates, subject to the provisions of sec. 2; and sec. 6 prohibits the owners from closing the gates of such dams, or obstructing the free flow of the water through the dams, during the months of July, August and September in each year.

After alleging the copartnership of the defendants, and after a statement of the rights which plaintiff claims under and by virtue of the above mentioned acts, the complaint proceeds as follows:

"That, acting under the authority contained in said laws, plaintiff fully constructed and completed said dams and each of them at the place aforesaid, and ever since the 1st day of June, 1875, has maintained and kept in repair said dams and each of them, and during all of said time has in every matter and thing whatsoever conformed to and complied with the several provisions of said laws on his part to be kept, done and complied with.

"That, between the 1st day of April and the 11th day of

June, 1876, plaintiff sluiced and run over said dams and the slides therein, and each of them, and, by the means of said dams and each of them, aided in driving down said Clam river into the Totogatic river, thence down said Totogatic river and into the Nimekagon river, thence down said Nimekagon and into the Saint Croix, thence down said Saint Croix river and into the Saint Croix boom within the corporation limits of said Saint Croix county, all of said other rivers being tributaries of said Saint Croix river, and all of said rivers being in the state of Wisconsin — two million six hundred and fifty thousand feet of logs owned by said defendants, and marked [here follows the mark]; by reason of which sluicing, running over said dams and the slides therein, and aiding by said dams in driving said logs, plaintiff became authorized to charge and has charged against, and is entitled to collect and receive of, said defendants, and to have a lien on said logs therefor, fifteen cents for each thousand feet of logs so run or driven as aforesaid, to wit: the total sum of three hundred and ninety-seven and 50-100 dollars; which said sum said plaintiff heretofore and on the 3d day of July, 1876, duly demanded of said defendants, but which said sum, with interest thereon from the 11th day of June, 1876, still remains due and unpaid from defendants to plaintiff."

Certain proceedings preliminary to the enforcement of a lien upon the logs for such tolls are then stated, and the complaint closes with a demand for judgment against the defendants for the amount of such tolls, and that the same be adjudged a lien upon the logs in question.

The defendants demurred to the complaint, on the grounds that it did not state a cause of action, and that it did not state facts sufficient to warrant a judgment for a lien upon the logs therein described; and they appealed from an order overruling the demurrer.

For the appellants, a brief was filed signed by *Henry C. Baker* and *John C. Spooner* as their attorneys, and by *Mc-*

*Cluer & Marsh*, of counsel, and the cause was argued orally by *John C. Spooner*. They argued, 1. That no cause of action is stated in the complaint *independent of the statutes* there pleaded. Conceding that there is an allegation of services rendered, there is no allegation that such services were necessary, or that defendants requested them, or knew of their being rendered, or either expressly or impliedly agreed to pay for them, and it is clear that this is not a case where defendants are compelled to accept and pay for plaintiff's personal services. 2. That the statutes relied on were legally inoperative to confer this cause of action; that it is apparent from the face of the act of 1874, that the stream in which plaintiff's dams are built is navigable; and that, while the legislature has power to provide for improving the navigability of such public highways, by the construction and maintenance of dams by individuals or corporations, and to authorize such individuals or corporations to collect reasonable tolls for the increased facilities for travel and transportation thus created, it has no power to authorize any person, for private gain only, to dam a stream which is navigable for the floating of logs to market, and to charge a fee for every log passing over the dam. The right to take tolls, being a charge upon the public and in violation of common right, could not be granted even by the crown, except upon some consideration of benefit to the public; as the erection of a wharf, the keeping of it in repair, and the like, or the giving of a right of way to the public over the property of the person to whom the toll was granted. 1 Term, 660; *Wiswell v. Hall*, 3 Paige, 318. Presumptively a dam across a navigable stream is an obstruction to navigation. All that is necessary by this act to enable plaintiff to collect tolls is, that *the logs shall pass over the sluices in the dams;* and upon all such logs he is authorized to collect tolls "as a compensation for keeping up and maintaining such dams," *i. e.*, for obstructing the navigation of the stream. The sole purpose of the dams, so far as is disclosed by these acts, is to en-

able the plaintiff, his heirs and assigns, to toll all logs passing down the stream. If the legislature can authorize the maintenance of a dam in a navigable stream for such a purpose, it may grant to any citizen the right to erect a toll gate and collect tolls of all persons passing over any highway, without requiring him to render any service whatever to the public in return. As in legislative grants of the power of taxation to municipal corporations, *the public use must affirmatively appear in the statute* (*Attorney General v. Eau Claire,* 37 Wis., 437–8), so, where a statute undertakes to grant a power to collect tolls for the use of a public highway, the public benefit which will support such a grant must *affirmatively appear from the statute itself.* But here it neither appears from the acts nor is alleged in the complaint, that the plaintiff's dams improve the navigation, or that any equivalent, in increased facilities or otherwise, is given to the public for the tolls claimed. And the acts nowhere indicate that the legislature had in view the improvement of navigation. The court will examine their language critically to see whether it indicates such an object. *Attorney Gen. v. Eau Claire,* 37 Wis., 434. If such had been the object, the legislature would have authorized a sufficient number of dams, to be constructed in such places as should be found best adapted for the purpose, and raised to any height that might be found necessary, and would have provided, as in all acts for public improvements, for condemning lands which might be overflowed or otherwise taken for the purposes; and it would not, as in the present case, have limited the dams to two in number, nor have indicated the sections of land upon which they should be constructed, nor have restricted the height to which the water should be raised, nor have left the builder exposed to a separate suit, as for a trespass, for each day's flowage of any land flowed thereby. Moreover, if the object was to *improve* the navigation of the stream, why should the act provide that its waters should run through the dams *unobstructed* thereby,

and *free*, during certain months of each year? " It is little likely that the legislature should provide against obstruction by that which was to be done for the purpose of improvement." *Attorney Gen. v. Eau Claire*, 37 Wis., 434. If, therefore, it may be conjectured that the right to construct and maintain these dams was granted to the plaintiff for any other purpose than to enable him to charge tolls, for his own private gain, upon all logs passing over such dams (which is the only purpose expressed in the statute), it is more probable, from the provisions of the acts themselves, that the object was to enable him to use the water for manufacturing or other hydraulic purposes, than that it was the improvement of the navigation. 3. That the statute relied upon is inoperative for the purpose of enabling plaintiff to enforce a *lien* upon the logs. It declares that such lien " may be enforced in the same manner as the lien of laborers on logs." There are three different statutes, each providing a different method for enforcing the liens of laborers upon logs (see Tay. Stats., ch. 153, §§ 19, 25 and 47), and the provision cited is void for uncertainty. Moreover (counsel argued at length) an examination of the several statutes referred to will show that the provisions of neither can be made applicable to the lien claimed in this action. 4. That the complaint is fatally defective in not alleging a compliance with sec. 2, ch. 296 of 1876, requiring the logs to be scaled below the St. Croix boom, and making such scale the one upon which tolls and fees shall be collected. Tay. Stats., 753, § 6. It may be said that though the dam here in question is a chartered dam, yet plaintiff is not a " chartered dam company." But to hold on this ground that the law is inapplicable to him, would be to sacrifice substance to shadow. The regulation is addressed to the use of certain *franchises*, not specially to the *persons* exercising them. The clear intent of the legislature was to bring all logs, as far as possible, driven out of Wisconsin into the St. Croix river, within the jurisdiction of the lumber inspector of the fourth district.

Logs are cut in Wisconsin in vast quantities, driven, before taxes can be collected upon them, into the St. Croix river, and thence into the boom at Stillwater, where they lie wholly without the jurisdiction of the state. It was chiefly to correct this that the act was passed. The spirit and object of the act should control. *Regina v. Inhabitants of Barton*, 11 Ad. & El., 343; R. S., ch. 5, sec. 1, subds. 2 and 12.

For the respondent, a brief was filed signed by *O. H. Comfort* and *J. W. Bashford* as his attorneys, and by *Gill, Bashford & Spilde*, of counsel, and the cause was argued orally by *R. M. Bashford*. They contended, 1. That legislative enactments granting franchises rarely declare in express terms that the grant is made for the public benefit; that when such franchises as those here in question are conferred, the presumption must be that they are for the public benefit; that no particular form of words is necessary to express the legislative intent; that the purpose to provide for improving the navigation of Clam river for log-driving purposes is clearly apparent from the language of the second and fourth sections of the plaintiff's charter (ch. 154 of 1874, as amended by ch. 263 of 1876); and that the court will not impute bad faith to the legislature, or countenance the suggestion that a nuisance has been authorized or a fraud sanctioned in the name of a public improvement. *Attorney Gen. v. Eau Claire*, 37 Wis., 400. 2. They further argued that a sufficient reference is made in the plaintiff's charter to the laws relating to liens upon logs, to enable the plaintiff to enforce such a lien in this case; but that, even if that were not true, the complaint was not demurrable on that ground, as a cause of action was therein stated against the defendants personally. *Eaton v. Gillet*, 17 Wis., 435; *Morse v. Gilman*, 16 id., 504; *State ex rel. Mitchell v. Smith*, 14 id., 564; *Smith v. Railway Co.*, 19 id., 326; *Williams v. Sexton*, id., 42. 3. They also contended that plaintiff's rights were not affected by ch. 296 of 1876; that this act did not repeal ch. 263 of the same year by necessary implica-

tion; that a general law will not affect a special act unless it plainly appears that such was the intent of the legislature; that ch. 296 is penal in its character, and must be strictly construed; that by its terms it does not include the plaintiff, who is not a "company;" that the act itself carefully distinguishes between individuals and corporations, and the history of legislation on the subject shows that the act was not intended to apply to individual dam owners; and that if, by its express terms, it had extended to the plaintiff, it would to that extent be void as impairing the value of the franchise and interfering with vested rights.

Lyon, J. The only grounds upon which a complaint can be successfully demurred to, are those specified in the statute (R. S., ch. 125, sec. 5); and a demand for greater or different relief than the averments of the complaint show the plaintiff entitled to, is not specified as one of the grounds of demurrer. Voorhies' Code (ed. of 1871), 204, note *e*, and cases cited. Hence a demurrer does not lie to a demand for judgment, and it was so held in *State ex rel. Mitchell v. Smith*, 14 Wis., 564. That portion of the demurrer which attacks the plaintiff's right to a lien on the logs goes only to the relief demanded, and is, therefore, not well taken. We cannot properly determine on this appeal whether the complaint shows that the plaintiff has or has not such right. If the complaint states facts which show that the plaintiff is entitled to recover the tolls claimed, although it may fail to show that he is entitled to the lien demanded, it states a cause of action, and the demurrer thereto was properly overruled.

This brings us to the question, Does it appear from the averments in the complaint, that the plaintiff is entitled to recover such tolls? The question will be considered on the hypotheses (which are favorable to the defendants) that the plaintiff's right of action depends entirely upon the acts

of 1874 and 1876, and that the stream across which the dams of the plaintiff are maintained, is navigable in fact.

Starting from the propositions thus assumed, the learned counsel for the defendants argue that the acts are unconstitutional, in that (as it is claimed) they have not for their object the improvement of the stream by furnishing increased facilities for navigating it, but that the authority conferred upon the plaintiff in those acts to erect dams upon the stream and collect tolls from the owners of passing logs was given for the private gain of the plaintiff and his assigns, and not to improve navigation. At the same time counsel admit that the legislature may authorize the construction and maintenance of dams upon navigable streams for the improvement of the navigability of such streams, and may authorize the persons or corporations constructing or maintaining such dams to collect reasonable tolls for the increased facilities thus furnished for travel and transportation. It is not denied that the tolls authorized by the acts are reasonable, if the acts are valid.

If the acts under consideration are of the character claimed — if they were enacted merely to promote private interests, and not to improve the facilities for transportation on the highway by water therein named, — they cannot be upheld as valid laws. But they are valid if it can be reasonably inferred from all their provisions that the improvement of navigation was their primary and principal object. No express declaration in the acts that such was the object and purpose of the legislature in enacting them, is required; nor is such a declaration usual in acts of a similar nature.

In examining these acts, we take notice of the fact that the capacity of many small navigable streams in this state to float logs and lumber into the larger streams below and to market, has been greatly increased by the erection of dams across them to hold or discharge the water as circumstances may require. The legislature has authorized the construction of such dams in numerous instances, and no doubt because there was a ne-

cessity for increased facilities to move the products of our forests to market.

Looking into the acts under consideration, we find that the plaintiff is required to build suitable slides in his dams for running logs, etc., over the same; to keep them in repair; to keep them open when the stream is at a "driving stage," and there are logs, timber and lumber to be run — unless it shall be necessary to hold the water back for the purpose of flooding or driving logs, etc., below the dams; and to maintain suitable flood-gates for the latter purpose. (Sec. 2.) In view of the frequent necessity for such dams in the great lumber regions of the state, already mentioned, and in view of the further fact that no other use of the dams and water is mentioned in the acts, we have little difficulty in holding that acts which so carefully provide for protecting and aiding the only kind of transportation to which such streams are adapted, must have been enacted for the purpose of improving and increasing the capacity of the streams as public highways. But were there any doubt of the legislative purpose, it is removed by the language of sec. 4, as amended, which gives tolls on logs passing over the slides or *driven by the aid of such dam or dams*, as compensation for keeping up the dams. This language clearly shows that the legislature regarded the dams, slides, gates, etc., as important and necessary aids to the navigation of the stream, and authorized their erection and maintenance with that view and for that purpose.

We conclude, therefore, that the acts under which the plaintiff's dams were erected and are maintained, do not contravene any provision of the constitution, and are valid laws.

But it is further argued on behalf of the defendants, that, conceding the right of the plaintiff at one time to collect tolls on logs passing over or through his dams, such right has been modified by a subsequent act, to wit, ch. 296, laws of 1876, which, it is claimed, only gives him the right to collect tolls after the logs have been scaled by an inspector *below* the St.

Tewksbury vs. Schulenberg and others.

Croix boom, while the averment in the complaint is that the logs in question were run *into* the St. Croix boom, and there is no averment that they were ever run or scaled below that boom.

The act referred to is ch. 296, Laws of 1876, amending certain sections of ch. 299 of 1875. Sec. 1 of the original act requires all *persons* who shall cut or manufacture logs and lumber in the fourth district (which includes Barron county), to file with the lumber inspector of that district an accurate description of their several marks upon such logs. Sec. 2 provides that any person so required to file a description of his mark, who shall fail to do so, shall be guilty of a misdemeanor, and on conviction thereof shall be punished, etc. The act of 1876 extends the provisions of sec. 1 of the original act *to corporations*, and of sec. 2 to the *officers or agents of corporations*. Sec. 2 was further amended by the act of 1876 by inserting therein the provision upon which counsel rely. The whole amended section is as follows: "Any person or officer or agent of any corporation who shall hereafter cut and manufacture logs and lumber in said fourth district, and shall neglect or refuse to comply with the requirements of this act in violation with filing* of the description of said marks, as set forth in the preceding section, is hereby declared to be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars, of which offense justices of the peace shall have concurrent jurisdiction with the circuit court; and no chartered dam company or log-driving association, or chartered log-driving company, in said fourth district, shall have any right to collect any tolls, either for sluicing or log-driving, unless the logs so sluiced or driven shall have been scaled by the inspector of logs and lumber of said fourth

---

* The section is so printed both in the act of 1875 and in that of 1876. The words, "in violation with filing," seem to be a clerical error for "in relation to the filing." REP.

district, or by his deputies, and all logs so sluiced or driven shall be scaled below the St. Croix boom, in Lake St. Croix, and such scale shall be the basis upon which such chartered dam companies, log-driving associations and log-driving companies shall collect their tolls and fees."

It will be seen that the legislature, in enacting the amendatory act, had under consideration the distinction between *persons* and *corporations*, and carefully framed the amendments to the original act with reference to that distinction. The original act in terms imposed a duty, and inflicted a penalty for nonperformance of such duty, upon *persons* alone. The amendatory act extended the duty to *corporations*, and the penalty to their officers and agents. The terms "persons" and "corporations" were not confounded, and neither was employed in a sense that included the other.

Because the legislature thus employed those terms in the amendment to sec. 1 and in the first amendment to sec. 2 of the original act, it cannot reasonably be presumed that in the second amendment to the latter section (which is the provision under consideration), they disregarded the distinction before observed, and employed the terms "chartered dam company or log-driving association, or chartered log-driving company," as including an individual to whom had been given the right to erect and maintain a dam. Had the legislature so intended, it is very apparent that the word *person* would have been employed, as in the other amendments.

Neither does the statutory rule of construction invoked for that purpose aid the construction contended for. Such rule is, that the word "person" may extend and be applied to bodies politic and corporate, as well as to individuals. R. S., ch. 5, sec. 12. But it is not enacted, and (so far as we are advised) has not been held, that the terms "bodies politic or corporate," or "corporations," must necessarily extend and be applied to individuals.

The foregoing observations dispose of all the objections

taken to the complaint.   We conclude that the complaint states facts sufficient to constitute a cause of action.

- *By the Court.*—Order affirmed.