## GULF, C. & S. F. RY. CO. et al. v. BOSTICK.
### (No. 6379.)

(Court of Civil Appeals of Texas. Austin. June 29, 1921.)

1. **Railroads ⚬⟶5½, New, vol. 6A Key-No. Series—Judgment against carrier, handling shipment during federal control, unauthorized.**

In an action for injury to cattle against carrier and Director General of Railroads, the successor to the Director General being made a party defendant, judgment against the carrier is unauthorized, where at time of shipment government was in charge of railroad.

2. **Carriers ⚬⟶228(5)—Delivery of cattle held shown by the evidence.**

In action for injury to cattle from rough handling and delay, evidence *held* sufficient to show that cattle had been delivered to the carrier.

3. **Appeal and error ⚬⟶1001(1) — Little evidence required to sustain verdict, where defendant offered no evidence.**

Where successor to Director General of Railroads claimed, on appeal from judgment for plaintiff in action for delay and negligent handling of cattle, that there was no evidence that carrier received the cattle, but the fact, easily disproved, was not disproved, little evidence is required to uphold the verdict and judgment.

4. **Appeal and error ⚬⟶880(1) — Failure of proof as to coparty immaterial on other party's appeal.**

Where, on appeal from judgment against carrier and successor to Director General of Railroads, judgment is rendered on confession of error that plaintiff take nothing by his suit against the carrier, it is immaterial whether the particular carrier sued carried the goods between the places alleged; all the roads between such places being within the control of the government.

5. **Evidence ⚬⟶44 — Judicial notice taken of government control of railroads.**

Judicial notice will be taken that Walker D. Hines, as Director General of Railroads, had control of all railroads from Fort Worth to Temple and from Temple to Lampasas in the state of Texas.

6. **Evidence ⚬⟶5(1)—Judicial notice taken of common knowledge.**

The court will take judicial cognizance of facts that may be regarded as forming part of the common knowledge of every person in the community of ordinary understanding and intelligence, as the court is presumed to know what everybody in that community of ordinary intelligence and information ought to know.

7. **Trial ⚬⟶335—Failure to separate damages in suit for delay and rough handling of cattle fatal, where no evidence of delay.**

In an action against the successor to the Director General of Railroads for damages to cattle, occasioned by delay and rough handling, in which there was no evidence of delay, judgment against the successor cannot be sustained, where the jury answered "Yes" to special issue whether cattle were damaged by negligence, either by delay or rough handling or both, and then found one sum as damages, and· judgment was entered, making a joint and several liability as to such sum.

Appeal from District Court, Lampasas County; F. M. Spann, Judge.

Action by John Bostick against the Gulf, Colorado & Santa Fé Railway Company and Walker D. Hines, Director General of Railroads, in which John Barton Payne, as the successor to Walker D. Hines, was made a party. From a judgment for plaintiff against both defendants, they appeal. Reversed as to the Santa Fé Company, and action as to it dismissed, and reversed and remanded for a new trial as to John Barton Payne.

Terry, Cavin & Mills, of Galveston, Roy L. Walker, of Lampasas, and Lee, Lomax & Wren, of Fort Worth, for appellants.

H. F. Lewis, of Lampasas, for appellee.

JENKINS, J. Appellee sued Gulf, Colorado & Santa Fé Railway Company and Walker D. Hines, Director General of Railroads, to recover damages for injury to cattle shipped from Fort Worth to Lampasas, by reason of the alleged negligence of defendants. Such negligence is alleged to have consisted in rough handling and unreasonable delay of the shipment. John Barton Payne was made party defendant, as the successor of Walker D. Hines. The case was submitted to a jury upon the following special issues:

"No. 1. Do you find from the evidence that the defendant railway company was negligent in the time taken in transporting the cattle of the plaintiff from Fort Worth, Texas, to Lampasas, Texas?"

To which the jury answered: "Yes."

"No. 2. Was said railway company, or its agents or employés, negligent in handling the train on which said cattle were shipped?"

To which the jury answered: "Yes."

"No. 3. Were the cattle composing said shipment damaged by such negligence, if any, either by delay in the time of shipment, or in the manner of handling, or both, as alleged by plaintiff?"

To which the jury answered: "Yes."

"No. 4. What amount of money will compen-

sate the plaintiff for the damage to his cattle, if any?"

To which the jury answered: "$691.50."

"No. 5. Was any part of the damages, if any, sustained by plaintiff's stock, proximately due to the inherent vice of such stock, and their propensities to lay down in the cars and be trampled by other stock in the cars, and to injure themselves?"

To which the jury answered: "No."

Upon the findings of the jury, the court rendered judgment against defendants, jointly and severally, for the sum of $691.50.

[1] Appellee confessed error as to the judgment against the railway company, for the reason that it alleged, and the undisputed proof shows, that at the time of the shipment the railway was in charge of the government, under its Director General. For this reason, the judgment against the railway company is reversed, and here rendered, that appellee take nothing by its suit against said appellant, but that it go hence without day and recover of appellee its costs in this behalf expended.

There is no assignment of error to the effect that the verdict and judgment are wholly unsupported by the evidence, but appellant Payne insists that such is the state of the record, and that this is fundamental error appearing from the face of the record, and should be considered without an assignment. He insists: (1) That it appears from the statement of facts that there was no evidence that the Gulf, Colorado & Santa Fé Railway Company ever received the cattle; (2) if so, there was no evidence as to the condition of such cattle when so received; and (3) that there is no evidence showing unreasonable delay.

[2, 3] As to the first two of the above propositions we cannot agree that such is the state of the record. The evidence shows that appellee unloaded the cattle at Lampasas November 29, 1919, and drove them to a ranch about 8 miles south of Lampasas, and that he had about 102 three year old steers. S. R. Payne, witness for appellee, testified that about December 4, 1919, appellee put in Payne's pasture about 100 three year old steers "that he had shipped from Fort Worth over the Santa Fé." We think this is some evidence in support of the allegation that the cattle were so shipped. It should require but little evidence to sustain a verdict and judgment, when there is nothing to the contrary, and when such allegation could be easily disproved, if not true. If the Gulf, Colorado & Santa Fé Railway does not run through Fort Worth to Lampasas, via Temple, this fact could easily have been shown; also, we think the proof is sufficient to sustain the allegation that the cattle were delivered to the railway company in good condition. As this case is to be reversed upon another point, doubtless proof as to these points will be strengthened on another trial.

[4, 5] As this is a judgment, as it now stands under our decision, against appellant Payne only, we think it is immaterial over what road the cattle were shipped from Fort Worth to Lampasas. We take judicial cognizance of the fact that Payne's predecessor, Hines, as Director General of railroads, had control of all railroads from Fort Worth to Temple, and from Temple to Lampasas, and if the cattle were injured by his negligence, as alleged, it is immaterial over what road he made the shipment.

[6] The court will take judicial cognizance of facts that may be regarded as forming part of the common knowledge of every person in that community of ordinary understanding and intelligence; or, in other words, the court is presumed to know what everybody in that community of ordinary intelligence and information ought to know. Cyclopedia of Law, vol. 16, p. 852; 1 Wharton on Evidence, § 339; 1 Greenleaf on Evidence. This principle of law has been applied in this state in the following cases: Railway Co. v. State, 72 Tex. 404, 10 S. W. 81, 1 L. R. A. 849, 13 Am. St. Rep. 815, in which is made the following citation from Wharton on Evidence:

"A judge in trying a case must not only exercise his own logical faculties in construing and applying evidence, but he must draw on his own sources of knowledge for such information as is common to all intelligent persons in the same community."

In support of this proposition, the court cites the following cases: Trenier v. Stewart, 55 Ala. 458; Gibson v. Stevens, 8 How. 399, 12 L. Ed. 1123; Vanderwerker v. People, 5 Wend. (N. Y.) 530; Pearce v. Langfit, 101 Pa. 507, 47 Am. Rep. 737; Steinmetz v. Turnpike Co., 57 Ind. 457; Tewksbury v. Schulenberg, 41 Wis. 584; Walker v. Allen, 72 Ala. 456; Oppenheim v. Wolf, 3 Sandf. Ch. (N. Y.) 571; Neaderhouser v. State, 28 Ind. 257.

In referring to the statement in 16 Cyclopedia, supra, Mr. Justice Harper, in Ex parte Botts, 69 Tex. Cr. R. 161, 154 S. W. 221, 44 L. R. A. (N. S.) 629, says that authorities in support of this proposition are cited in that work from Alabama, California, Connecticut, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, New York, Oregon, Virginia, Washington and the United States Supreme Court. In Gaddy v. Smith, 116 S. W. 164, this court applied this principle as to location of the city of Waco, citing Carson v. Dalton, 59 Tex. 502; Solyer v. Romanet, 52 Tex. 567.

It is true that Mr. Justice Brown, speaking for the court in Telegraph Co. v. Smith, 88 Tex. 13, 30 S. W. 550, said:

"The distance between Dallas and Waxahachie, the means of travel, and the time it would

require to make the trip, were not matters of such common knowledge that the jury could determine the issue without evidence."

We take it that the words "means of travel" did not refer to the absence of testimony as to whether or not a railroad ran from Dallas to Waxahachie. The findings of fact by the Court of Civil Appeals show that there was such a road, operating both passenger and freight trains. But there was no evidence as to the schedule of such trains, the distance between the points, or the usual time of making the trip. The case was reversed upon the ground that the evidence as to the contract sued on was variant from that alleged in the petition. What Judge Brown said upon the point above referred to was very proper, as informing the trial court what evidence would be necessary to sustain a judgment upon another trial.

In Railway Co. v. State, supra, our Supreme Court held that it would take judicial cognizance of the fact that certain railroads in this state were parallel lines. After quoting from Wharton on Evidence, as hereinabove set out, and citing the cases hereinabove cited, Mr. Justice Gaines, speaking for the court, said:

"The authorities cited show that we must take notice of the geography of the state, and at least of its navigable streams. It is a matter of history that important lines of railroad, once established, have remained as fixed and as permanent in their course as the rivers themselves. They supersede, in the main, all other modes of travel between the points which they touch, and become as well, if not better, known than any other geographical feature of the country. Their locality becomes 'notorious and indisputable.' For instance, can we doubt that the Houston & Texas Central road runs from Houston to Dallas, and that the Gulf, Colorado & Santa Fé touches with its lines the same points?"

We do not think that the decision in Telegraph Co. v. Smith, supra, was intended to overrule or limit the doctrine as to judicial knowledge announced in Railway Co. v. State, supra. In Miller v. Railway Co., 83 Tex. 520, 18 S. W. 954, it was said:

"The court would take notice of the locality of defendant's line of railways, for it is a physical and geographical fact of undisputed notoriety."

In Ex parte Botts, supra, the court said:

"This court, soon after its organization, adopted the general rule laid down by Mr. Greenleaf: 'Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction.' Moore v. State, 7 Tex. App. 20. And this has always been the rule in this court and the Supreme Court."

[7] It will be seen from the findings of the jury as above set out that there was no separation of damages occasioned by rough handling and by delay. The finding is that the damages were occasioned by both causes, or, if by only one, it is left uncertain by which. There was no evidence as to the distance from Fort Worth to Temple, or from Temple to Lampasas, and no evidence of the usual time consumed in making shipments between these points.

Upon authority of Telegraph Co. v. Smith, supra, we sustain appellants' fourth assignment of error, which, in effect, is that the judgment should be set aside because there was no evidence as to the matters above referred to.

For the reasons stated in the next preceding paragraph of this opinion, this case is reversed and remanded for a new trial herein.

Reversed and remanded.