## Case No. 6,116.

### HARRIS et al. v. BRADLEY et al.

[2 Dill. 284;[1] 16 Int. Rev. Rec. 165; 5 Chi. Leg. News, 88.]

Circuit Court, D. Nebraska. Nov. Term, 1872.

#### WAREHOUSE RECEIPTS—NATURE—RIGHTS OF HOLDERS.

1. In the absence of statute or usage, instruments known as "warehouse receipts" need not be in a particular form.

2. An instrument executed and signed by warehousemen in the following words: "Received in store for account of Bailey & Weightman, 3,000 sacks of corn," is a warehouse receipt, and has an assignable or negotiable quality, and its indorsement and delivery by the persons to whom it was issued to a third person for value, passes the title to the corn, and the makers of the instrument are liable to the holder or assignee, if, without his consent, they afterwards deliver the corn to the persons from whom it was originally received, without the production of the receipt.

[Cited in Rahilly v. Wilson, Case No. 11,531; First Nat. Bank v. Bates, 1 Fed. 710.]

[Cited in Thorne v. First Nat. Bank, 37 Ohio St. 258; Durr v. Harvey, 44 Ark. 301; Union Sav. Ass'n v. St. Louis Grain Elevator Co., 81 Mo. 342; State v. Kirby, 115 Mo. 447, 22 S. W. 455.]

3. The statute of Nebraska on the subject of warehouse receipts construed.

This is an action for three thousand sacks of corn, mentioned in an instrument claimed to be a warehouse receipt, made by the defendants May 26th, 1870, and indorsed to the plaintiffs [Harris, Hutchinson & Co.]. The instrument itself, and the circumstances under which it was indorsed to and is held by the plaintiffs, appear in the special verdict of the jury hereinafter mentioned. Under issues presenting the right of the plaintiffs to recover, and denying liability on the part of defendants, the action was tried by a jury, who, under instructions, found a general and also a special verdict. These are as follows:

General verdict:

"We, the jury, find the issues in favor of the plaintiffs, and assess their damages at the sum of twenty-five hundred and eighty-four dollars.

"But we, the jury, find also the following special verdict, and submit to the court as a question of law, whether, on the facts thus specially found, the plaintiffs are entitled to judgment, to-wit:

"Special verdict:

"(1) We, the jury, find specially that the defendants, Bradley & Robertson, being copartners as alleged in the petition, executed in Nebraska the receipt mentioned in the petition, a copy of which is as follows: 'Neraska City, May 26th. 1870. Received in store for account of Bailey & Weightman, 3,000 sacks of corn. (Signed) Bradley &

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Robertson.' And delivered the same in Nebraska to said Bailey & Weightman.

"(2) We find that this receipt was endorsed by Bailey & Weightman, and delivered to the plaintiffs, who were partners as alleged in the petition, and commission merchants and grain dealers, doing business at St. Louis, Mo., on or about June 2, 1870, and that plaintiffs still hold it.

"(3) We find that the said Bailey & Weightman delivered the receipt now in suit to the plaintiffs, on or about June 2, 1870, in security for a pre-existing debt, and for advances to be made, and that when this suit was brought, and down to the 1st day of January, 1871, the said Bailey & Weightman owed the plaintiff, on account of such pre-existing debt and such advances, a greater sum than the value of the corn mentioned in the receipt. There is no evidence of the state of the accounts between the said Bailey & Weightman and the plaintiffs since the 1st day of January, 1871, and so we cannot say what sum the said Bailey & Weightman now owe the plaintiffs. We find that the defendants were not aware when they issued this receipt in suit, of any special or other arrangement between plaintiffs and Bailey & Weightman, by which the plaintiffs agreed to advance money or become the indorsers of Bailey & Weightman to raise money, and that they should give the plaintiffs, as security, warehouse receipts for grain, or that this receipt was wanted for any such purpose; and we find that before the defendants, Bradley & Robertson, had noticed that the plaintiffs held the receipt in suit, they had, on Bailey & Weightman's order, shipped the corn mentioned in the receipt in suit to Chicago, for the benefit of Bailey & Weightman.

"(4) We find that the defendants, Bradley & Robertson, at and before the time the receipt in suit was issued, were chiefly engaged in buying, storing, and shipping grain, and were, at or about the time the receipt was given, mainly engaged in thus buying and shipping grain for Bailey & Weightman on a contingent commission, but that they advertised themselves as doing business as commission and forwarding merchants and grain dealers, and to some extent received, stored, shipped, and forwarded from the boats and to the interior of the country, goods for others. The plaintiffs demanded the corn of defendants, Bradley & Robertson, before suit was brought, and they refused to deliver it. We find the value of the corn mentioned in the receipt in suit at the time it was demanded by the plaintiffs of Bradley & Robertson, was the sum of twenty-four hundred dollars, which, with interest to this date, amounts to the sum of twenty-five hundred and eighty-four dollars ($2,584), which last sum we find to be the plaintiffs' damages, if, on the foregoing facts, the plaintiffs are entitled to judgment."

The plaintiffs now move for judgment on the verdicts, which is resisted by the defendants.

Mr. Wakeley, for plaintiffs.
Redick & Briggs, for defendants.

Before DILLON, Circuit Judge, and DUNDY, District Judge.

DILLON, Circuit Judge. 1. The title to the corn, mentioned in the receipt of May 26th, 1870, was in Bailey & Weightman, and the defendants, Bradley & Robertson, were their bailees. The receipt was the evidence of the title of Bailey & Weightman, and the indorsement and delivery thereof in St. Louis to the plaintiffs, the property being then in Nebraska City, was equivalent to the delivery to the plaintiffs of the property itself. The indorsement and delivery of the receipt of the warehouseman in the course of trade, passes the title and right of possession of the property to the party to whom it is so endorsed and delivered. Such is the law, and such is the understanding of the business community. The legal title to the property passed to the plaintiffs by the indorsement and delivery to them of the evidence of the title. To the extent of their advances, certainly they are purchasers for value, if not, indeed, as respects their pre-existing debt, and they hold the title to the corn to protect their interests. When the transfer was made to them, the defendants became their bailees, and ceased to be the bailees of Bailey & Weightman. All the foregoing principles are established by the judgment of the supreme court of the United States, in the case of Gibson v. Stevens, 8 How. [49 U. S.] 384.

2. The defendants insist that the instrument in suit is not a warehouse receipt, either within the contemplation of the local statute of the state on that subject (Rev. St. Neb. p. 652), or of the law relating to this peculiar class of instruments. See McNeil v. Hill [Case No. 8,914], where the subject is discussed by Mr. Justice Miller.

The fourth special finding of the jury shows that the defendants were engaged in buying, storing, and shipping grain generally, and particularly for Bailey & Weightman (to whom the receipt was issued), on a contingent commission. The defendants advertised themselves to the world as merchants and grain dealers. Clearly they were warehousemen, and it is to be presumed that they were known as such to the business community.

It is urged that the instrument in suit was not intended to be a warehouse receipt, or to be used or negotiated as such, but was intended simply as a memorandum or personal voucher to Bailey & Weightman to show that the defendants had that amount of corn in store for them; and this view, it is argued, is supported by the nature or tenor of the paper itself, since it contains no words indicating that the defendants are to account to any persons other than Bailey & Weightman.

In other words, it is claimed by the defend-. ants, as a matter of law, that in order to give to such an instrument, even when issued by a merchant or warehouseman, a negotiable or assignable quality, so as to estop the makers from showing against a subsequent holder that the property mentioned has not been in fact received, or had, before notice of the assignment, been delivered to the persons to whom the instrument was originally made, the instrument should contain language showing that it was to be, or might be thus used. If the receipt in question had contained, after the name of Bailey & Weightman, the words "or order," or after the word "corn," the words "delivered in virtue of this receipt," or similar language, it is conceded that it would have the qualities of a warehouse receipt, and that a delivery to any person without the production of the receipt, would be at the peril of the warehouseman or party making it. No authorities have been produced to sustain this view; nor is it shown that there is any such custom or usage among warehousemen, or known to the business community.

There is nothing in the statute of the state requiring or implying that such instruments should be of any particular form, and the instrument on which the plaintiffs rely for title would seem to be more formal than some of those in the case of Gibson v. Stevens, before cited.

Under these circumstances, it is my opinion that the defendants were not justified, with this receipt outstanding, in shipping the corn mentioned in it, as the jury find they did, to Chicago, for the benefit of Bailey & Weightman. Judgment for plaintiff.

NOTE. Dundy, District Judge, did not concur in the foregoing views, and, after judgment for the plaintiffs, in accordance with the opinion of the circuit judge, the case was certified to the supreme court upon division of opinion, on the question whether, upon the special verdict, the plaintiffs were entitled to judgment.

The following are the statutory provisions referred to in the opinion (Rev. St. Neb. p. 652):

"To prevent fraud in warehousemen and others.

"Section 246. No warehouseman, wharfinger, or other person, shall issue any receipt or voucher for any goods, wares, merchandise, grain, or other produce or commodity, to any person or persons purporting to be the owner or owners thereof, unless such goods, wares, merchandise, or other produce or commodity, shall have been bona fide received into store by such warehouseman, wharfinger, or other person, and shall be in store and under his control at the time of issuing such receipt.

"Sec. 247. No warehouseman, wharfinger, or other person, shall issue any receipt or other voucher upon any goods, wares, merchandise, grain, or other produce or commodity, to any person or persons, as security for any money loaned, or other indebtedness, unless such goods, wares, merchandise, grain, or other produce or commodity, shall be, at the time of issuing such receipt, the property of such warehouseman or wharfinger, or other person, and shall be in store and under his control at the time of issuing such receipt or other voucher, as aforesaid.

"Sec. 248. No warehouseman, wharfinger, or other person, shall issue any second receipt for any goods, wares, merchandise, grain, or other produce or commodity, while any former receipt for any such goods or chattels, as aforesaid, or any part thereof, shall be outstanding and uncanceled.

"Sec. 249. No warehouseman, wharfinger, or other person, shall sell or encumber, ship, transfer, or in any manner remove beyond his immediate control, any goods, wares, merchandise, grain, or other produce or commodity, for which a receipt shall have been given as aforesaid, without the written assent of the person or persons holding such receipt."