**LYNN STORAGE WAREHOUSE CO. v. SENATOR.\***

(Circuit Court of Appeals, First Circuit. January 6, 1925.)

No. 1757.

**1. Warehousemen ⊕17—Liability under Massachusetts Warehouse Act for delivery without production of receipt.**

Under Warehouse Act Mass. 1907, c. 582, § 8, which provides that if a warehouse receipt is not plainly marked on its face "nonnegotiable" or "not negotiable," a holder, who purchased it for value supposing it to be negotiable, may treat it as imposing upon the ware-

\*Certiorari denied 45 S. Ct. 513, 69 L. Ed. —.

houseman the same liabilities which he would have incurred had the receipt been negotiable, such a holder may maintain an action against the warehouseman as for conversion for delivery of the goods without requiring production of and taking up the receipt under section 12.

**2. Warehousemen ⊕15(2)—Purchaser of receipt held a holder thereof.**

The purchaser in Russia of a warehouse receipt then held by a trust company in New York as agent of the seller, and calling for goods stored in the United States, title to which was transferred to the purchaser by other documents, with an order for the receipt, was a holder of the receipt within Warehouse Act Mass. 1907, c. 582, § 1.

**3. Principal and agent ⊕174 — Evidence of failure to repudiate acts of agent promptly held to warrant finding of ratification.**

Evidence that a principal was notified that on instructions of its agent a bank had placed to its credit a sum in payment for goods sold by the agent, and that no reply was made to the notification, held to warrant a finding by the jury that the principal affirmed the acts of its agent and accepted the sum as full payment.

**4. Appeal and error ⊕971(2)—Competency of expert for determination by trial court.**

It is for the trial court to determine whether a witness is competent to testify as an expert as to the value of property.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by Mordka Senator against the Lynn Storage Warehouse Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Edwin H. Abbot, Jr., of Boston, Mass. (Hiram E. Miller, of Lynn, Mass., and Benjamin N. Johnson and Hugh W. Ogden, both of Boston, Mass., on the brief), for plaintiff in error.

Lee M. Friedman, of Boston, Mass. (Paul D. Turner and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action in contract or tort in three counts brought in the federal District Court for Massachusetts by Mordka Senator, a citizen of Russia, against the Lynn Storage Warehouse Company, a Massachusetts corporation. The first count is for conversion of 291 bales of leather containing 5,300 oak sides weighing about 150,000 pounds. The second count is based on section 8, chapter 582, of the Acts of Massachusetts of 1907, and charges the defendant as a warehouse-

man for failure to hold the leather in question in accordance with its contract under a certain warehouse receipt and for failure to deliver it upon demand to the plaintiff, the indorsee, owner, and holder of the receipt, which did not have placed upon its face the words "nonnegotiable" or "not negotiable," and which he purchased for value supposing it to be negotiable. The third count declares that the plaintiff bought the warehouse receipt and has acquired the right to have the defendant hold possession of the merchandise to his account and that the defendant neglected and refused to deliver the merchandise according to the terms of its obligation in said receipt. The case was tried before a jury. In the submission of the case the jury were instructed to answer certain questions, which questions and answers were as follows:

1. Did the plaintiff in Moscow, Russia, on or about December 2, 1917, buy and pay for Bogatsky's interest in the leather here in question, and in the documents representing it? Answer: Yes.

2. Was the alleged transaction between Bogatsky and the plaintiff sufficient under Russian law to vest Bogatsky's interest in the plaintiff? Answer: Yes.

3. Was the plaintiff duly authorized by Bogatsky and the Moscow Industrial Bank to receive from the Guaranty Trust Company the warehouse receipt in question? Answer: Yes.

4. Was the plaintiff, at the time when he purchased the leather in question or the documents representing it from Bogatsky, informed that the documents of title were held by the Guaranty Trust Company under instructions that they were to be delivered to the purchaser or his representative only upon receipt by the trust company of $99,000 for the seller's account? Answer: No.

4a. Was he then informed that the full amount had not been paid? Answer: No.

5a. Was the warehouse receipt intrusted to the Guaranty Trust Company under instructions that it should be delivered only upon payment of $99,000 to the trust company? Answer: No.

5b. If so, did those instructions continue throughout the entire transactions? Answer: No.

6. Did the plaintiff at the time when he received the warehouse receipt from the Guaranty Trust Company suppose it to be a negotiable receipt? Answer: Yes.

6a. If the jury find that the plaintiff bought Bogatsky's interest in the leather and the receipt, did the plaintiff at that time (December, 1917) suppose the receipt to be negotiable? Answer: Yes.

7. Did the Guaranty Trust Company on behalf of the plaintiff make due demand upon the defendant for the delivery of the leather in question? Answer: Yes.

7a. If so, was that demand refused upon the ground that the leather had already been delivered? Answer: No.

7b. And if so, was the plaintiff informed of such demand and refusal before he received the receipt? Answer: Yes, but not the grounds of the refusal.

8. Did the International Manufacturers' Sales Company accept the 347,370 rubles in the hands of the Guaranty Trust Company as complete payment for the leather in question? Answer: Yes.

8a. Did Hilliard & Merrill accept the 326,-315 rubles in the hands of the Guaranty Trust Company as complete payment for the leather in question? Answer: Yes.

9. What was the fair value of the leather in question (a) in September, 1917? (b) in October, 1919? Answer: (a) 62c. per pound. (b) 72c. per pound.

10. Had a reasonable time for the completion of the purchase of the leather by the payment in full of the purchase price to the Guaranty Trust Company elapsed before Hilliard & Merrill retook the leather? Answer: No.

11. Did the Guaranty Trust Company at any time have $99,000 applicable to payment for the leather in question? Answer: No.

11a. What was the highest value which the ruble had in American money after the receipt of the credit of 347,370 rubles by the Guaranty Trust Company? Answer: .27⁹⁄₁₀c.

12. Was the delivery of the warehouse receipt by the Guaranty Trust Company to the plaintiff a breach of duty on its part? Answer: No.

Having returned these findings the jury, under further instructions of the court (the terms of which are not given), returned the following verdict:

"The jury find for the plaintiff and assess damages in the sum of one hundred thirty-three thousand three hundred eighty ($133,-380) dollars.

"But if, as a matter of law, the plaintiff is not entitled to a verdict, then the jury find for the defendant and consent that this verdict may be entered on order of the United States District Court for the District of Massachusetts, or of the United States Circuit Court of Appeals for the First Circuit,

or of the Supreme Court of the United States, with same effect as if returned by them."

The defendant excepted "to the action of the court in so instructing the jury as to the verdict."

A motion having been filed to set aside the verdict and certain of the specific findings, after hearing the parties the District Court set aside the findings embodied in the answers to questions Nos. 4, 5a, 5b, 6, 7a, and 7b as being against the weight of the evidence, but allowed the other findings and the verdict for the plaintiff to stand, and thereafter entered a judgment for the plaintiff from which this writ of error was taken.

There are some 66 assignments of error. They consist largely in objections to the court's refusal to instruct the jury that on all the evidence the plaintiff could not recover on all or any one of the counts, and to the refusal to give other requested instructions; to the admission and exclusion of evidence; and to certain instructions that were given.

At the argument before us there was discussion as to whether what was returned by the jury subsequent to its special findings was a general verdict for the plaintiff for $133,380, with permission to the court to enter the provisional verdict returned for the defendant if, as a matter of law, the verdict for the plaintiff was erroneous; or whether what they then returned was a directed verdict for the plaintiff based upon the special facts found, and a verdict for the defendant if, as a matter of law, the special facts found would not warrant a verdict for the plaintiff. The record does not show that the verdict returned for the plaintiff was a directed one. It purports to be the verdict of the jury and to embrace such findings of fact as to liability and damages as were essential to support it; and, in the absence of a showing to the contrary, the presumption is that it was such. The exception of the defendant saved at the time the verdict was taken presents no question of law, for it does not appear what the instructions were to which the exception was saved. It is not claimed, and could not well be, that the specific facts found are inconsistent with the verdict; for they are not.

The principal question in the case is whether there was evidence from which the jury were warranted in finding the verdict for the plaintiff.

Construing the evidence in the light most favorable to the plaintiff, it tended to prove:

That Hilliard & Merrill, Inc., were leather dealers at Lynn, Mass., and were interested in a concern called the International Manufacturers' Sales Company of America, which was engaged in the business of selling American goods abroad; that along in January, 1917, the sales company sold to one Bogatsky, a Russian merchant, 150,000 half sides of sole leather manufactured by Pfister & Vogel of Milwaukee, and 5,300 oak sides of Hilliard & Merrill leather; that Bogatsky was to pay $99,000 for the Hilliard & Merrill leather; that arrangements were made with the Guaranty Trust Company of New York for the transmission of the money to the trust company from Bogatsky through a Russian bank; that before the Russian bank was willing to credit the money to the trust company, it required that the documents of title to the leather should be in the hands of the trust company for the account of Bogatsky or his representative; that Hilliard & Merrill, on being informed of this requirement, placed in the hands of the Lynn Storage Warehouse Company (the defendant) 291 bundles containing 5,300 oak sides weighing about 150,000 pounds, and received for it a receipt in the following form:

"No. 7381.   Lynn, Mass., March 16, 1917.

"Received from Hilliard & Merrill, Inc., on storage in Warehouse No. 1 Bldg. 2 the following described merchandise:

Marks and Brands.

"291 Bdls Lea. containing 5,300 oak sides, wt. 150,000 lbs.

"Storage per month or part thereof.

"Cartage.

"Labor.

"Bills payable monthly.

"For account of

"Hilliard & Merrill, Inc.

"Special Notice.

"Perishable goods at owner's risk by change of temperature. All goods are subject to storage charges, and may be held until payment is made or secured. Written orders are required before goods are delivered. Storage expires at 6 p. m. the ——— day of each month. Goods on which one year's storage is due are liable to be sold according to law.

"D. J. Monaghan, Mgr."

That on March 16, 1917, Hilliard & Merrill indorsed and mailed the warehouse receipt to the American Express Company, and on March 20, 1917, wrote the express company not to let the leather or warehouse receipt go out of their possession "until guaranteed funds to the amount of $93,000 are put in your possession for our account"; that later, to enable the trust company to

carry out the transaction, the express company, at the direction of Hilliard & Merrill, indorsed the receipt to the trust company under date of May 12, 1917, and on that day sent it in a letter to the trust company, in which it said: "We beg to attach hereto warehouse receipt and invoice covering 291 bales oak sides 150,000 lbs., invoice amounting to $99,000." That two days later the express company wrote the trust company a second letter supplementing the former one and saying: "This will, therefore enable you to make payment of this amount to Messrs. Hilliard & Merrill, or to the International Manufacturers' Sales Company." That after an exchange of cables relating to arranging the credit, the Guaranty Trust Company, on May 17, 1917, cabled the Russian bank that they held a "warehouse receipt 291 bundles leather stored by Hilliard-Merrill sold to Bogatsky Petrograd, sellers expect your credit here cash against warehouse receipt advise," and that on May 25, 1917, the Russian bank replied: " Have credited your account rubles 347,370 from Bogatsky accordance your cable 7th of March." That the trust company having thus received a remission of rubles from Russia, under instructions from the sales company, the agent of Hilliard & Merrill, set apart from the rubles received 21,054.22 to the disposal of the sales company and 326,315.78 rubles to that of Hilliard & Merrill; that on July 17, 1917, the trust company drew its check for that amount of rubles to the order of Hilliard & Merrill. and wrote them: "At the request of the International Manufacturers' Sales Company of America, New York, we beg to advise that we are holding for your account the sum of Rbls. 326,315.78, and will allow you thereon interest at the rate of 3% per annum from May 25th, which amount is subject to your disposal at any time you desire to make disposition of the same." That Hilliard & Merrill received this letter and made no response to it; that, after holding the rubles in this way for over eight months without any response, the trust company again, on March 26, 1918, wrote Hilliard & Merrill: "Referring to the rouble checks which you have bought of us and which have been held by us at your request for your account and risk, we beg to notify you that the interest arrangement terminates owing to the conditions, over which we have no control, at present existing in Russia. * * * Please inform us whether you wish your checks to remain any longer with us or shall we forward same to you." That Hilliard & Merrill received this letter but made no an-

swer to it; that during this period rubles had been falling and the price of leather advancing; that in the latter part of August and during September, 1917, Hilliard & Merrill removed from the warehouse the 5,-300 sides of leather represented by the warehouse receipt without turning over the receipt to the warehouse company for cancellation, it being then outstanding in the hands of the trust company, and without, at that time, giving to the warehouse company, a written order of any kind, although later, in November, 1919, having learned that the plaintiff had come to this country and claimed the leather, it gave the warehouse company a written delivery order for the leather, dating it back to August 26, 1916; and that Hilliard & Merrill later sold the leather for $93,000.

It further appeared that Hilliard & Merrill were to get $93,000 for the leather; that Bogatsky was to pay the sales company $99,000 for it, the difference going to the sales company, probably to cover freight and insurance; that in January, 1917, the sales company informed the trust company that the Bogatsky sale amounted in all to $99,000; that he had deposited with the Russian bank 35,000 rubles as evidence of good faith and that the Russian bank should receive from him additional rubles such as,. with the 35,000 already deposited, would be equivalent to $99,000; that later, on January 17, 1917, the trust company notified the sales company that they were cabling the Russian bank to receive from Bogatsky 347,370 rubles less 35,000 already deposited, and on January 19, 1917, they cabled the Russian bank: "Receive rubles 347,370 Bogatsky our account cable receipt." That at that time rubles were worth 28½ cents and the 340,370 rubles was arrived at on that basis to make up the $99,000; that in February, 1917, the sales company, learning that the Russian bank claimed that it had not received the trust company's cable of January 19, requested it to repeat that cable to the Russian bank, and on February 20, after further solicitation to that effect by the sales company, the trust company cabled repeating its cable of January 19 in terms; that on March 6, 1917, the sales company informed the trust company that it had received word that the Russian bank had not received the cables about the rubles on the Bogatsky payment and requested the trust company to cable again; that thereupon, on March 7, 1917, the trust company again repeated its cable of January 19; that on March 24, the trust company received from

3F.(2d)—36

the Russian bank a telegram in reply saying that they would credit the trust company's account with the Bogatsky rubles as soon as they heard that the trust company had received for the Russian bank's disposal the warehouse receipt and invoices for the leather, "Warehouse receipts hold our disposal"; that as a result of this telegram the warehouse receipt, dated March 16, 1917, was later, in May, indorsed over to the trust company by the express company at the direction of Hilliard & Merrill; that thereafter the trust company, on May 15, cabled the Russian bank that they held the warehouse receipt for the leather and received a cable from that bank on May 25 that they had credited trust company's account with the 347,370 rubles from Bogatsky.

On May 25, when this cable was received, the value of the ruble had fallen so that the credit then received was less than $99,000 or somewhere in the vicinity of $95,874.12. There was some evidence that Bogatsky had, in January, 1917, deposited the required number of rubles with the Russian bank, but that the bank had withheld his money contrary to his instruction to establish a credit with the trust company. In June the shrinkage in the rubles had increased to approximately $10,000. It also appeared that in June, 1917, the trust company, at the instance of the sales company, cabled the Russian bank to receive from Bogatsky 48,830 additional rubles; that the former amount was insufficient to pay the $99,000, and received no reply; that on June 3, 1917, the trust company cabled the Russian bank: "We are holding at your disposal a warehouse receipt for 5,300 sides of leather." That on July 9, 1917, the Russian bank in reply cabled the trust company to ship the leather through the American Express Company; that, thereafter and prior to July 17, the sales company, being informed of the cable to ship the leather through the American Express Company and being aware that the additional rubles had not been obtained, undertook to arrange for the shipment and directed the trust company to apportion the 347,370 rubles between it and Hilliard & Merrill as before stated; that in furtherance of the shipment the warehouse receipt was indorsed over to the express company, but the express company, ascertaining that it was unable to make the shipment on account of war conditions, in August, 1917, the receipt was indorsed back to the trust company and again delivered to it for the account of Bogatsky. It was after it was known that the shipment could not then be made that Hilliard & Merrill took the leather from the warehouse.

It further appeared that the plaintiff was in the leather business at Warsaw and as the German troops approached Warsaw he went to Moscow; that at Moscow in September, 1917, he entered into a contract with Bogatsky for the purchase of the Pfister & Vogel and Hilliard & Merrill leather for three million rubles, of which he paid part in cash and the balance in installments, the final payment being made December 2, 1917. After the completion of the payments on December 2, 1917, the plaintiff received from the Russian bank a letter and other papers stating that the documents of title for the leather were held at the full disposal of the Russian bank and turning over to him full ownership therein; that later he received from Bogatsky, in further proof of his right, an acknowledgment taken before a notary public that Bogatsky had received full payment from Senator. Being driven out of Moscow by the Bolshevists, Senator reached New York in the fall of 1919 and presented his papers to the Guaranty Trust Company, who turned over to him all the documents in regard to the Pfister & Vogel leather, which leather was delivered to him; that later the Guaranty Trust Company indorsed the warehouse receipt to him and, demand having been made of the defendant for the leather which was refused, this suit was brought.

The parties are in dispute as to whether the warehouse receipt, being "For account of Hilliard & Merrill, Inc.," was a negotiable receipt within the meaning of section 6, chapter 582, of the Acts of Massachusetts of 1907, so that it could be negotiated and its negotiation would transfer a right to the possession of the goods, if the plaintiff was a purchaser for value in good faith within the meaning of section 12. If the words, "For account of Hilliard & Merrill, Inc.," mean for delivery to the order of Hilliard & Merrill, the receipt would undoubtedly be negotiable and there would appear to be some authority for such a holding. Harris v. Bradley, 2 Dill. 284, Fed. Cas. No. 6,116. The parties to whom it was issued apparently so treated it. But we do not find it necessary to decide the question, for, if it is essential to the plaintiff's right to recover under counts 1 and 3 of his declaration that the receipt be negotiable, nevertheless, as the plaintiff's verdict and judgment may be sustained if he is entitled to recover under the second count, even though the warehouse receipt was not strictly a negotiable one with-

in the meaning of section 6, we proceed to consider whether he may recover under count 2.

[1] As previously stated, count 2 is based on section 8 of chapter 582 of the Massachusetts Act of 1907, which reads:

"Sec. 8. A nonnegotiable receipt shall have plainly placed upon its face by the warehouseman issuing it 'nonnegotiable,' or 'not negotiable.' In case of the warehouseman's failure so to do, a holder of the receipt who purchased it for value, supposing it to be negotiable, may, at his option, treat such receipt as imposing upon the warehouseman the same liabilities which he would have incurred had the receipt been negotiable."

The receipt did not have stamped upon its face or elsewhere the words "nonnegotiable," or "not negotiable," and this being so, as was held in Joseph v. P. Viane, Inc., 118 Misc. Rep. 344, 194 N. Y. S. 235, affirmed 206 App. Div. 698, 199 N. Y. S. 930, the receipt "was in legal effect negotiable, as respects the warehouseman, if the holder of it purchased it for value supposing it to be negotiable," although as respects any party to the transaction other than the warehouseman it would not be. Eccles v. Munn, 138 Ark. 99, 210 S. W. 626. If, therefore, the plaintiff, at the time he brought this action, had previously purchased the receipt for value supposing it to be negotiable and obtained actual possession of it, he was a holder (section 1) and could maintain this action against the warehouseman, the defendant, for failure to take up and cancel the receipt; that being the warehouseman's duty under section 12, where he delivers goods for which he has issued a negotiable receipt, except in cases provided for in section 35 of the act, which are not applicable. And this is apparently so without regard to whether a holder of a nonnegotiable receipt would, under such circumstances, acquire the legal title to the goods covered by it.

The jury, in addition to its general verdict, has found specifically that the plaintiff in December, 1917, bought and paid for Bogatsky's interest in the leather and documents representing it; that he was duly authorized by Bogatsky and the Russian bank to receive the warehouse receipt from the trust company, and that in December, 1917, when he bought and paid for the leather and the receipt he supposed the receipt to be negotiable. The defendant contends that there was no evidence warranting a finding that in December, 1917, when the plaintiff bought and paid for the leather and receipt, he supposed the receipt was negotiable. On the contrary, there was evidence that Bogatsky and the Russian bank required the trust company to procure the warehouse receipt and hold it to their full disposal before they would credit the rubles, which was done, and that Bogatsky and the Russian bank, at the time the plaintiff bought and paid for the leather and receipt, gave the plaintiff to understand that the warehouse receipt was held to their full disposal, which was a representation that it was negotiable. There may be evidence conflicting with this obtained from the plaintiff on cross-examination by putting into his mouth language he did not understand. But whether he did or not was for the jury to decide, and they have found as above stated.

[2] The defendant also contends that the plaintiff was not a holder under section 8, as defined in section 1, unless, at the time of the payment in December, 1917, he acquired physical possession of the warehouse receipt. But at that time the evidence shows that the receipt was in the hands of the trust company in New York, and that Bogatsky and the plaintiff were in Russia, so that delivery to and physical possession by the plaintiff could not then be had. Such being the case, the documents which were given by Bogatsky and the Russian bank to the plaintiff purporting to transfer all of Bogatsky's title to him was a sufficient delivery to pass the title at least. Gibson v. Stevens, 8 How. 384, 12 L. Ed. 1123. He then acquired the title that Bogatsky had to the receipt and such possession as the latter had through the trust company, and the evidence shows that before this action was brought he had acquired not only possession through the trust company but physical possession of the receipt. He was therefore a holder within the meaning of section 1, being a person who had actual possession and a right of property in the receipt.

[3] The defendant further contends that the trust company held the receipt on condition that it was not to part with it until it received from Bogatsky rubles which, at the time of their receipt, were equivalent to $99,000, and that the plaintiff knew that the trust company held it subject to such condition and was not to part with it until such sum was received. There is no finding that at the time he bought and paid for the leather and the receipt he knew the trust company held it subject to a condition. There was evidence that he knew that Bogatsky was to pay $99,000 or its equivalent, and that he was informed that the full amount had been paid, and that the receipt was held

at the full disposal of Bogatsky and the Russian bank. Furthermore, if it could be said that the plaintiff knew, at the time he purchased from Bogatsky, that the trust company held the receipt on the condition named, the jury has found that Hilliard & Merrill accepted the 316,315 rubles in the hands of the trust company as full payment. But the defendant says there was no evidence warranting this finding. The evidence was that Hilliard & Merrill's agent, the sales company, instructed the trust company to credit 326,315 rubles to Hilliard & Merrill and that the trust company notified Hilliard & Merrill by mail on July 17, that "at the request of the International Manufacturers' Sales Company of America, New York, we beg to advise that we are holding for your account the sum of Rbls. 326,315.78, and will allow you thereon interest at the rate of 3% per annum from May 25th, which amount is subject to your disposal at any time you desire to make disposition of the same," and that Hilliard & Merrill received the letter and made no response to it. If the act of its agent, the sales company, was unauthorized, it was the duty of Hilliard & Merrill, when informed of the act of its agent in its behalf, to repudiate it at once and not lie by and take the benefit of it if profitable or renounce it if otherwise. Foster v. Rockwell, 104 Mass. 167, 172; Benn v. Forrest, 213 F. 763, 130 C. C. A. 277; Williston on Contracts, § 278, O. 532. And as Hilliard & Merrill failed to disaffirm the act when brought to its attention, the jury were warranted in finding that they affirmed it and accepted the rubles credited to it as full payment.

The defendant further contends that there was no evidence from which the jury could find that the sales company was the agent of Hilliard & Merrill. But it appears that Hilliard & Merrill, in writing of the Bogatsky leather transaction, referred to it as the "leather purchased of us through the International Manufacturers' Sales Company;" and Merrill testified that the transaction continued afterwards the same as it was at the time he wrote the letter.

As we understand it, section 8 gives the plaintiff, if he was a holder of the receipt, having purchased it for value supposing it to be negotiable, a direct contract right against the warehouseman the same as though the receipt ran to his order, and the defendant, the warehouse company having failed to take up and cancel the receipt when it delivered the goods, as required by section 12, may be held as for a breach of contract, or, having failed to deliver the goods on demand, as for a conversion of them.

We have examined the defendant's requests for instructions and, so far as they have not already been considered, we find that they were either given in substance or properly refused. Many of them have no relation to the count on which the verdict and judgment are sustained.

We have also examined the charge, in so far as it was excepted to, and are of the opinion that no legal error was committed.

The evidence sought to be elicited from the manager of the defendant's warehouse was rightly excluded. It was unimportant what the manager thought or intended the warehouse receipt to mean.

The letters from the Guaranty Trust Company to Hilliard & Merrill (Exhibits 4 and 5) were competent as showing what the trust company had done with the rubles at the request of Hilliard & Merrill's agent, the sales company, and were but a step in the line of proof tending to show their approval of their agent's act and the acceptance of the rubles as herein before explained. The letters from the American Express Company (Exhibits 9 and 10) relate to the insurance on the leather. The letters in themselves were immaterial and nonprejudicial.

[4] Further exception was taken to permitting the plaintiff to testify to the value of heavy oak side leather in the fall of 1919. It was for the trial court to determine whether the plaintiff was competent to testify as an expert to the value of such leather. The evidence was that the plaintiff was a dealer in leather and, on coming to this country in 1919, familiarized himself with the value of leather as sold in the markets of Boston and New York and particularly of leather of the character of that in question to which he asserted ownership. We cannot say there was no evidence on which the trial court was warranted in reaching the conclusion that the witness was qualified.

Exception was also taken to the introduction of certain entries from the Nostri Ledger, which appeared to be a book kept by the trust company showing its accounts with different banks and in which was the account with the Russian bank through which the transaction in question was had; and the accountant who had general supervision of matters of that kind for the trust company testified that it was a book kept in the regular course of business and contained entries showing the trust company's receipt on May 25, 1917, of 347,370 rubles from the Russian bank. The defendant has advanced

no reason showing wherein this evidence was incompetent, and we see none. It was cumulative evidence of a fact otherwise well established by the evidence and in no way could have harmed the defendant.

We have examined the questions raised by the assignments of error not herein otherwise alluded to and find nothing in them.

The judgment of the District Court is affirmed, with costs to the defendant in error.